[Civ. No. 12700.   First Dist., Div. Two.   July 14, 1944.]

KAISER COMPANY INC. (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and MOLLIE PRUITT, Respondents.

R. P. Wisecarver for Petitioners.

Everett A. Corten and R. C. McKellips for Respondents.

NOURSE, P. J.—The petitioner seeks an annulment of the award of compensation to an employee who was injured during an altercation between an assistant foreman and a fellow employee.

The applicant, Mollie Pruitt, was a negro woman employed as a tank scaler at petitioner's shipbuilding plant located at Richmond. She worked in a gang composed of two white women, one colored, and four others whose race and color were not identified. All members of the gang were instructed to take orders only from their leaderman. A white man, Fay Jones, was an assistant labor foreman of the plant, who was not connected with this gang and had no authority over it. On the day in question Jones, in a drunken condition, came to the place where the gang was working and engaged in making love to Daisy, one of the white women. He ordered Willa Mae, one of the colored women, to leave the place and work in some other part of the ship. She refused and an altercation arose. He then took Daisy to the hold of the ship where they remained for more than an hour.

In the meantime the two colored women and one of the white women went to the rest room where they discussed Jones' order to Willa Mae. Unknown to them Mrs. Jones was present, and having learned of her husband's conduct with Daisy, she set out to find him. Husband and wife later came to the place where applicant was working and he demanded that he be told who had given the information to his wife. The colored women told him that all they had discussed in Mrs. Jones' presence was his order to Willa Mae to leave the gang. Mrs. Jones told him that a white woman told her about his affair with Daisy. Jones threatened to beat the one who told. Willa Mae insisted that she had talked only about his order to her. Without further provocation Jones started to beat Willa Mae. He knocked her to the floor and was kicking her when the applicant pleaded with him not to hurt the woman. He then turned on her and struck her over the eye with a steel helmet. The leaderman interfered and was also beaten.

The propriety of the award rests upon the question whether the injuries inflicted upon the applicant arose out of, and in the course of, her employment. In support of the award the commission found that the injuries to the applicant occurred ''in the course of and arising out of her employment.'' This finding is amply supported by the evidence and must be sustained unless it can be said as a matter of law that when an employee goes to the protection of a fellow employee while both are engaged in the course of their employment he

thereby leaves his master's service and acts upon his own time and responsibility.

The early cases upon which petitioner relies are out of harmony with the modern rule that the suppression of a quarrel between employees and an attempt to rescue an injured employee is a duty imposed upon the employer, and that, when a fellow employee intercedes for that purpose he acts in the interest of and for the benefit of his employer. A case directly in point is *United States Casualty Co.* v. *Hampton* (Tex. Civ.App.) 293 S.W. 260. A fight arose between a subforeman and an employee. All the other employees quit working. One employee endeavored to separate the parties and was injured. It was held that this was in the service of the employer and hence that the injuries arose out of the employment.

Illustrative of the modern rule is *Hartford Acc. & Ind. Co.* v. *Cardillo,* 112 F.2d 11 where injuries sustained in a fight between two fellow employees were held compensable.

The opinion contains an interesting discussion of the transition from the early decisions founded on the defenses of contributory negligence and the negligence of a fellow servant and refers to the resistance against the liberal rule of compensation. It is said (p. 15) ''Several factors have sustained the resistance. One is the hangover from common law conceptions of profiting by one's own wrong. But this applies as well, in logic, to contributory or one's own exclusive negligence. Another was the now thoroughly dissipated notion that voluntary responsible action cannot be accidental. The volitional character of the act also raised a supposed analogy to 'independent, intervening agency' in tort causation. There was, further, an assumed essential opposition between 'personal' acts and those of an 'official' (i. e., related to the work) character. An assault necessarily involves emotional make-up and disturbance. In a broad sense nothing is more personal. Quarreling is always so. This accounts for the early disposition to regard all injuries from wilful assault as not compensable, a view also necessarily dictated, except rarely when duty requires fighting, if tendency of the particular act to forward the work or direct connection with line of duty are the tests of liability. But that view now is repudiated universally in recognition that work causes quarrels and fights. That they involve volition and fault, have no tendency to

forward the work, and are permeated with the personal element of anger no longer suffices to break the causal connection between work and injury. Emotional disturbance is not of itself an 'independent, intervening cause' or a 'departure from the work.'"

And again (p. 17) "This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly line or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences. Any other view would reintroduce the conceptions of contributory fault, action in the line of duty, nonaccidental character of voluntary conduct, and independent, intervening cause as applied in tort law, which it was the purpose of the statute to discard. It would require the application of different basic tests of liability for injuries caused by volitional conduct of the claimant and those resulting from negligent action, mechanical causes and the volitional activities of others."

It is a fair inference from the evidence here that the applicant interceded in the affray for the protection of herself and her fellow workers and that in doing so she was engaged in the service of the employer to stop the fight and permit the work of the employer to go on. To hold otherwise it would be necessary to follow the discarded theory that any voluntary act done in the course of employment for the benefit of the employer is an assumption of risk and not compensable.

The award is affirmed.

Sturtevant, J., and Spence, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied September 11, 1944.