[No. A083825. First Dist., Div. Five. Mar. 29, 2000.]

WILLIAM SMITH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and CITY OF
HAYWARD, Respondents.

## COUNSEL

Jones, Clifford, McDevitt, Naekel & Johnson and Mark A. Vickness for Petitioner.

Hanna, Brophy, MacLean, McAleer & Jensen and Robert G. Heywood for Respondent City of Hayward.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

**JONES, P. J.**—In this case we consider the workers' compensation claim of a police officer who injured his hand when he struck a wall with his fist during an argument with a superior officer. The sole issue to be decided is whether the Workers' Compensation Appeals Board (Board) correctly barred the industrial injury claim of petitioner William Smith (applicant) against respondent City of Hayward (City) when the Board found an intentional injury and invoked the bar of subdivision (a)(5) of Labor Code section 3600.[1] We conclude that the intentional injury defense set forth in subdivision (a)(5) requires proof of a deliberate intent to injure oneself. Substantial evidence of that intent on applicant's part was not presented in this case. Accordingly, we reverse the Board's finding that applicant's industrial injury claim was barred.

### BACKGROUND

The opinion and award of the workers' compensation administrative law judge (WCJ) sets out the following largely undisputed facts. City had employed applicant for over 22 years as a police officer. On February 21, 1997, applicant injured his right hand when he struck a wall in frustration during a heated discussion with a superior officer concerning a theft case applicant had previously successfully resolved.

---

[1] All further statutory references are to the Labor Code unless otherwise noted.

Some months before applicant suffered his industrial hand injury, he was assigned to investigate the theft of a ring stolen from a car while the car was being serviced. Applicant identified and arrested a suspect, who agreed to return the ring and to repay the $85 owed the pawnshop operator, with the understanding that probation revocation proceedings would not be instituted. As a result of applicant's success in obtaining the ring, he was given a commendation by his supervisor, Sergeant Rowe.

On the date of the injury, approximately seven months after the recovery of the ring, applicant returned to the station near the end of a 10-hour shift to perform routine duties unrelated to the prior stolen ring case. He was approached by Detective Euna Balizan, a coworker who outranked applicant. Detective Balizan began quizzing applicant about the specifics of the previously resolved ring theft case and expressed her disapproval of applicant's handling of the case. She was upset because the pawnshop had not recovered the money owed. Detective Balizan informed applicant that if he had handled the case correctly, he would have pressured the suspect to repay the money by threatening revocation of the suspect's probation. It was clear to applicant that Balizan expected him to collect the $85.

In reaction, applicant felt defensive, embarrassed and unfairly criticized. He was unable to answer all of Detective Balizan's questions because his recollection of the specifics of the case was vague at that time. Therefore, applicant asked Detective Balizan to put the report in his box for his review as he left the report room to perform his routine duties.

Detective Balizan, however, followed applicant out of the room. She continued to lecture and question him, reiterating the entire conversation just exchanged. Although applicant attempted to end the discussion several times, Detective Balizan continued to press him. The dialogue became heated, and both parties were speaking in loud voices. Applicant told Detective Balizan that at this time after the fact, he could not hold the suspect and collect the money from him. In an attempt to calm Detective Balizan, applicant said, "Euna, Euna" (the first name of Detective Balizan), which only seemed to make her more angry. Detective Balizan was bent over at the waist and, while not physically threatening applicant, was "coming at him" in a verbally hostile manner.

Overwhelmed and frustrated, applicant retreated approximately 10 steps away from Detective Balizan. He turned and spontaneously hit the wall with his fist, injuring his hand. Applicant had trained as a boxer for many years. When he struck the wall, it was a spur-of-the-moment act and not what applicant would describe as a proper boxing punch. After striking the wall,

applicant continued walking to another room, where he was asked by others what he had done to his hand. At that time, applicant noticed a protruding bone and blood.

Applicant filed an application for adjudication of claim with the Board, alleging injury arising out of and occurring in the course of his employment. On November 20, 1997, the matter was tried before the WCJ, who issued his findings, award and order on April 17, 1998. Finding injury and awarding statutory compensation benefits, the WCJ determined that the provisions of section 3600, subdivision (a)(5) do not bar compensation for applicant's injury.

City petitioned for reconsideration, maintaining that section 3600, subdivision (a)(5) barred compensation for applicant's injury because it was sustained when he intentionally punched a wall in frustration during the encounter with his superior officer. The WCJ filed his report, responded to City's assertions and recommended denial of the petition for reconsideration.

On July 6, 1998, having granted reconsideration, the Board filed its opinion and order, reversing the WCJ's findings. The Board found that applicant intentionally injured himself because his injury was foreseeable given his expertise in the sport of boxing. Relying solely on a 1970 divided Board panel decision in *Paul v. Glidden-Durkee* (1970) 35 Cal.Comp.Cases 273, the Board held that applicant's claim was barred under subdivision (a)(5) of section 3600.

We granted applicant's petition for writ of review.

## DISCUSSION

The Board is empowered on reconsideration to resolve conflicts in the evidence, to make its own credibility determinations, to reject the findings of the WCJ and to enter its own findings on the basis of its review of the record. (*Rubalcava v. Workers' Comp. Appeals Bd.* (1990) 220 Cal.App.3d 901, 908 [269 Cal.Rptr. 656].) Nevertheless, the decision of the Board must be supported by substantial evidence in the light of the entire record. (*Ibid.*, citing *Lamb v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978]; *Garza v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].)

Our review is governed by section 5952. "This court must determine whether the evidence, when viewed in light of the entire record, supports the award of the [Board]. This court may not reweigh the evidence or decide

disputed questions of fact. [Citations.] However, this court is not bound to accept the [Board's] factual findings if determined to be unreasonable, illogical, improbable or inequitable when viewed in light of the overall statutory scheme. [Citation.] Questions of statutory interpretation are, of course, for this court to decide. [Citations.]" (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233-234 [20 Cal.Rptr.2d 26].).

With this standard of review in mind, we turn to section 3600, subdivision (a)(5). Workers' compensation liability "in lieu of any other liability whatsoever to any person . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . in those cases where the following conditions of compensation concur: [¶] (1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment. [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence. [¶] . . . [¶] (5) *Where the injury is not intentionally self-inflicted.*" (§ 3600, subd. (a), italics added.)

Section 3600, subdivision (a)(5) limits recovery of workers' compensation benefits to situations where an employee's "injury is not intentionally self-inflicted." In general, a self-inflicted injury is compensable if proximately caused by the employment. (*Guerra v. Workers' Comp. Appeals Bd.* (1985) 168 Cal.App.3d 195, 199 [214 Cal.Rptr. 58] [industrial back injury a contributing cause of subsequent self-inflicted burn injury].) "[T]he causal connection between employment and the injury is sufficient if the employment is a contributing cause of the injury." (*Ibid.*)

In considering the application of section 3600, subdivision (a)(5) to the claim before us, we find little authority interpreting subdivision (a)(5)'s limitation on an employee's workers' compensation entitlement. (See generally 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 1999) § 4.21[1], p. 4-38.) "The defense of intentional self-injury, apart from suicide, has produced little law of significance" in any of the states, not just California. (1 Larson, Workers' Compensation (desk ed. 1999) § 36.60, p. 6-63.) ▬▬▬ The parties cite no published cases in California that directly address the meaning of "not intentionally self-inflicted" under subdivision (a)(5) of section 3600, and our research has

found none.[2] *Guerra v. Workers' Comp. Appeals Bd.*, *supra*, 168 Cal.App.3d 195 does not assist us because it is factually distinguishable and applied subdivision (a)(5) without analysis of the statutory language.

■ Interpreting section 3600, subdivision (a)(5), our role is to ascertain the intent of the Legislature so as to effect the purpose of the law. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) In so doing, we look to the specific language of the statute, where possible, giving the words of the statute their usual and ordinary meaning. It is our responsibility to harmonize the various parts of the statute with the general tenor and scope of the statutory framework as a whole. (*Ibid.*)

■ Section 3600, subdivision (a)(5) explicitly qualifies its bar on compensation for self-inflicted injuries only when such injuries are intentional. Our focus turns then to the meaning of the word "intentional" in this context.

In deciding whether compensation for an injury is barred as intentionally self-inflicted, the Board, as well as the reviewing court, is enjoined by section 3202 to construe the workers' compensation provisions of the Labor Code liberally " 'with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' " (*Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 726 [100 Cal.Rptr. 301, 493 P.2d 1165].) Consequently, in determining what type of injurious conduct the Legislature meant to exclude from the compensation scheme, the

---

[2]In this case the parties rely on an unpublished, hence not citable, court decision from Division Four of this court and a 30-year-old divided Board panel decision, *Paul v. Glidden-Durkee, supra,* 35 Cal.Comp.Cases 273. These two cases, the parties assert, come to opposite conclusions on the self-inflicted injury issue. We note that Court of Appeal opinions which are not published in the Official Reports, even though available in print in the California Compensation Cases (Cal.Comp.Cases), may not be cited or relied upon in any court. (Cal. Rules of Court, rule 977.) On the other hand, Board panel decisions and denials of petitions for writ of review reported in the California Compensation Cases and in the California Workers' Compensation Reporter (Cal. Workers' Comp. Rptr.), along with occasional Board denials of petitions for reconsideration also reported periodically in the latter publication, are properly citable authority, but only to the extent that they point out the contemporaneous interpretation and application of the workers' compensation laws by the Board. (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 827, fn. 7 [45 Cal.Rptr.2d 197].)

This is consistent with "the well-established principle that contemporaneous administrative construction of a statute by the agency charged with its enforcement and interpretation, while not necessarily controlling, is of great weight; and courts will not depart from such construction unless it is clearly erroneous or unauthorized." (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683]; accord, *Griffith v. Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 1260, 1264 & fn. 2 [257 Cal.Rptr. 813].) Although we encourage citation of these cases, we emphasize that they are of limited precedential value and unquestionably have no stare decisis effect in an appellate court. (*Ralphs Grocery Co., supra,* 38 Cal.App.4th at p. 827, fn. 7.)

provisions of subdivision (a)(5) of section 3600 must be narrowly and strictly construed. (6 Cal.3d at p. 726.)

In analyzing a different statute, our Supreme Court discussed the compensation exclusions set forth in subdivision (a)(5) of section 3600. (*Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465, 473 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758].) ■ The court described the type of injury barred by subdivision (a)(5) as follows: "The only intentional misconduct of an employee which excludes his right to compensation is *the deliberate infliction of injury upon himself,* his participation in an altercation in which he is the aggressor, or where his injuries are caused by intoxication. . . . These provisions were obviously designed, *at least in part, to prevent an employee from injuring himself in order to collect compensation,* to deter physical aggression by employees, and to prevent injuries due to intoxication. The fact that the Legislature chose to except these particular types of intentional acts from compensation coverage does not imply that all types of employee misconduct which may be described as intentional will preclude recovery of compensation." (27 Cal.3d at pp. 472-473, italics added.)

Thus, subdivision (a)(5) of section 3600 clearly "rules out the individual who may try to obtain compensation benefits through self-help." (1 Herlick, Cal. Workers' Compensation Law (5th ed. 1998) § 10.4, p. 10-10.) When employees cause their own injury, they may still recover compensation benefits under the statutory scheme. Benefits accrue regardless of the fault of any person or in the absence of fault. Employees will be denied benefits only if the self-infliction is intentional. The causal connection between employment and the injury is sufficient if the employment is a contributing cause of the injury; it need not be the sole cause. (*Madin v. Industrial Acc. Com.* (1956) 46 Cal.2d 90, 92 [292 P.2d 892].) "Where the injury occurs on the employer's premises, while the employee is in the course of employment, the injury arises out of the employment unless the connection is so remote from the employment that it is not an incident of it." (*Id.* at pp. 94-95.)

■ Turning to the instant record, the facts are undisputed. Clearly, the animosity created by the unrelenting exchange between Detective Balizan and applicant in the workplace regarding a work event resulted in the explosion of applicant's temper, which led him to spontaneously punch the wall in anger. While the claim presented here is based on an act intentionally done, there is no substantial evidence applicant intended to injure himself. We conclude that subdivision (a)(5) of section 3600 does not bar his claim.

In this case, the Board's reasoning focused on the fact that applicant was trained in boxing techniques. The Board thereby wrongly introduced concepts of foreseeability and negligence into its analysis when such concepts

are not part of the compensation bargain. Whether applicant was a trained boxer and might be presumed to know the risk of injury is not determinative. While applicant may have acted rashly or impulsively, or may have been negligent or even reckless in punching the wall, there is no evidence that he deliberately sought to injure himself, thereby breaking the chain of causation. Mere carelessness or contributory negligence of the injured does not break the causative connection unless such intervening carelessness or negligence is the sole and exclusive cause of the injury. (*Beaty v. Workers' Comp. Appeals Bd.* (1978) 80 Cal.App.3d 397, 403 [144 Cal.Rptr. 78].) Here, it clearly was not.

In the opinion of the WCJ, it was very clear that the subject matter of the conversation was work-related. Despite applicant's reasonable attempts to defuse the situation by physically moving away, he was followed by his superior officer and was unable to disengage, thereby striking the wall in anger and frustration.

Many employees, particularly those in high-stress positions such as law enforcement, are " 'under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are *immediately relevant* to their [employment] tasks. . . . No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent [work] pressures. That it [e.g., punching a wall] is not relevant to the immediate task, involves a lapse from duty, or contains an element of volition . . . does not disconnect it from them nor nullify their causal effect in producing its injurious consequences. Any other view would reintroduce the conceptions of contributory fault, action in the line of duty, nonaccidental character of voluntary conduct, and independent, intervening cause as applied in tort law, which it was the purpose of the statute to discard. . . .' " (*Kaiser Co. v. Ind. Acc. Com.* (1944) 65 Cal.App.2d 218, 221 [150 P.2d 562] (*Pruitt*).) The fact " '[t]hat they involve volition and fault, have no tendency to forward the work, and are permeated with the personal element of anger . . .' " is not per se enough to break the causal connection between an employee's work and injury. (*State Comp. Ins. Fund v. Ind. Acc. Com.* (1952) 38 Cal.2d 659, 665 [242 P.2d 311], italics omitted.)

We disagree with the Board's reasoning in *Paul v. Glidden-Durkee, supra,* 35 Cal.Comp.Cases 273, the writ-denied case relied on by the Board majority herein. Although factually similar to this case, *Paul* is neither dispositive nor legally correct in its analysis. In *Paul*, the injured employee struck his hand against a door in anger during a heated discussion with a district sales

manager at his place of employment. Awarding compensation benefits, the WCJ in *Paul* properly made a distinction between an act intended to cause injury and the act actually performed by the employee who intended to hit the door but did not intend to injure himself. The probable intent of the Legislature in enacting section 3600, reasoned the WCJ, was to " 'bar benefits to those who deliberately injure themselves for the purpose of claiming compensation benefits.' " (35 Cal.Comp.Cases at p. 274.) The divided Board panel in *Paul* rejected the WCJ's reading of the statute.

The Board majority in *Paul* relied on insurance and criminal law principles in deciding that the employee's injury fell within the exclusion of section 3600, reasoning that he had intended to perform the act and knew that injury was a probable result. Employee Paul's act of hitting his fist against a door in anger, incorrectly concluded the Board, constituted "[a]t the very least . . . a positive, wanton and reckless disregard of [the] possibly damaging consequences" which thus barred the injury from compensation coverage. (*Paul v. Glidden-Durkee, supra,* 35 Cal.Comp.Cases at p. 274.)

We reject the Board's suggestion here, as well as in *Paul,* that in defining conduct that constitutes intentional self-injury, we should be governed by the rules of criminal law. (See *Mathews v. Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at p. 727, fn. 4.) "Had the Legislature intended to adopt those rules, it surely would have used the technical terms of the criminal law rather than the words it chose." (*Ibid.*) Furthermore, nothing in this record suggests that applicant's volitional, impulsive act included a deliberate intent to inflict harm to himself as required under subdivision (a)(5) of section 3600 and thus break the chain of obvious industrial causation, grounds to eliminate or even reduce his compensation entitlement. (See *Associated Indem. Corp. v. Ind. Acc. Com.* (1941) 18 Cal.2d 40, 46 [112 P.2d 615].) Had the Legislature intended to withhold compensation from employees who are injured merely because they carry out a rash or impulsive act that ultimately results in an injury, it would have included the word "accidentally" in the statutory exception or deleted the word "intentionally" from the phrase "intentionally self-inflicted."

Contrary to *Paul,* where the employee Paul's claim was barred despite a lack of evidence of an actual intent to inflict the injuries, a recent Board panel decision, although amiss in its reliance on *Paul,* properly implicated the bar to compensation set out in subdivision (a)(5) of section 3600 based on evidence of the injured employee's actual intent to inflict injury upon himself. (*Blue Cross of California v. Workers' Compensation Appeals Board* (1998) 63 Cal.Comp.Cases 431; writ den.) In *Blue Cross,* the employee lost his tile business, began working for his son, and developed psychological

problems. Within a two-week period, he threatened to kill himself, drove his car into a concrete column at 50 miles an hour and attempted suicide by sitting in his car in a closed garage with the car's engine running. The Board concluded that the employee had acted with the specific intention to harm himself. (*Id.* at p. 433.)

The evidence in the case before us of a rash or impulsive act taken in response to a work-related provocation stands in sharp contrast to the evidence of an intentional suicide attempt in *Blue Cross.* Employees who merely act rashly or impulsively neither expect nor intend to necessarily hurt themselves; nor are their resulting work-related injuries automatically non-compensable. (See generally 1 Larson, Workers' Compensation, *supra,* §§ 36.61-36.62, p. 6-63.)

In conclusion, the Board's interpretation of the subdivision (a)(5) exception here was flawed. Given the absence of substantial evidence that applicant's injury was entirely unrelated to his job as a police officer *or* that he deliberately intended to injure himself, the Board erred as a matter of law in its determination that the injury was barred by section 3600, subdivision (a)(5).

## DISPOSITION

The decision of the Board after reconsideration determining that applicant did not sustain injury arising out of and in the course of his employment is annulled, and the matter is remanded to the Board for further proceedings consistent with the views expressed in this opinion. The parties shall bear their own costs.

Haning, J., and Stevens, J., concurred.

The petition of respondent City of Hayward for review by the Supreme Court was denied June 14, 2000.