[No. G030706. Fourth Dist, Div. Three. June 30, 2003.]

DEPARTMENT OF CORRECTIONS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and JERRY
STENTZ, Respondents.

## COUNSEL

Richard A. Krimen, Robert W. Daneri and Don E. Clark for Petitioner.

L. Eugene Hallsted for Respondent Jerry Stentz.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

**RYLAARSDAM, J.,**—Petitioner California Department of Corrections (Department) challenges a decision of respondent Workers' Compensation Appeals Board (Board) awarding to respondent Jerry Stentz temporary disability indemnity in the sum of $126 per week. It contends that because Stentz, a state prisoner at the time of his injury, was earning only sentencing credits, he is not entitled to indemnity. We agree and annul the Board's award.

### FACTS

Stentz claimed back injury caused by an industrial accident on March 3, 1996, while he was employed as a sorter/steam cleaner in a prison laundry. After his release from prison, Stentz pursued a claim for temporary disability (TD) benefits. The State Compensation Insurance Fund (Fund) determined his benefit amount to be $0.00 per week based on his earnings while imprisoned. Stentz sought a hearing before the Board on the disputed issue of his right to disability benefits based on earning capacity versus actual wages earned. Stentz's Social Security records of his earnings from 1977 through 2000 were placed into evidence. They showed Stentz earned $11,809 in 1994, his last preincarceration earnings.

After several hearings, the workers' compensation judge (WCJ) issued his opinion, findings, and award, finding Stentz was entitled to TD at the rate of $126 per week. In reaching his conclusion the WCJ considered Labor Code sections 3370 and 4453 (all further statutory references are to this code unless otherwise stated). The WCJ noted that at the time of Stentz's injury he received no wages, and had he received them, they would have been "inconsequential." Instead of relying on Stentz's actual prison wages, which would have equated to a TD rate of $0.00, the WCJ focused on Stentz's *earning capacity*, and, based on his 1994 wages of $11,809, ordered Fund to pay TD at the rate of $126 per week.

Fund filed a timely petition for reconsideration, arguing Stentz's wages were no more than minimum, and, assuming his earning capacity could be

used to increase his disability rate, there was no substantial evidence presented on this issue. In his report and recommendation on petition for reconsideration, the WCJ recommended the petition be denied, concluding Stentz was entitled to either TD at the minimum rate of $126 per week or TD based upon his earning capacity. The Board adopted and incorporated the WCJ's report and denied reconsideration. Department, defendant employer in the workers' compensation proceedings, filed a petition for writ of review.

## DISCUSSION

Stentz suffered an industrial injury in March 1996 while incarcerated in state prison. State prison inmates are limited to minimum TD rates. In determining temporary and permanent disability indemnity benefits for inmates, "the average weekly earnings shall be taken at *not more than the minimum* amount set forth in Labor Code section 4453." (§ 3370, subd. (a)(5), italics added.) For injuries occurring after July 1, 1995, in computing average annual earnings for purposes of TD, the average weekly earnings shall be taken at "not less than *the lesser of* one hundred eighty-nine dollars ($189) or 1.5 times the employee's average weekly earnings from all employers . . . ." (§ 4453, subd. (a)(6), italics added.)

An industrially injured employee's TD rate is two-thirds of the employee's average weekly earnings. (§ 4653.) Thus, the minimum TD rate for the period under consideration here would be the lesser of two-thirds of $189, which is $126, or 1.5 times Stentz's weekly earnings.

The record reflects that on the date of his injury, Stentz was not receiving cash wages but was working for sentencing credits. Applying the statutes above, Stentz's TD rate would be zero (1.5 times weekly earnings of $0.00). Displeased with that amount, the WCJ calculated Stentz's *earning capacity* before and after his incarceration, and his earnings of $21,460 in 1993 and $11,809 in 1994, in computing Stentz's wages.

The WCJ noted those wages would yield weekly earnings of $227 per week and a compensation rate of $151.33 per week. "This of course is more than earnings of $189 per week which yields a compensation rate of $126 per week which is the minimum, so therefore pursuant to Labor Code Section 4453, the applicant will receive the lesser which is a compensation rate of $126 per week." The WCJ's stated objective, adopted by the Board, was to predict what Stentz's earnings would have been *but for* the industrial injury. Further, the WCJ stated it could certainly be projected that with Stentz now out of prison, absent the industrial injury he could have earned $227 per week.

The Board is correct in that "earning capacity at the time of injury is the touchstone of average earnings in California." (*West v. Industrial Acc. Com.* (1947) 79 Cal.App.2d 711, 722 [180 P.2d 972].) But that standard does not apply to state prison inmates who have removed themselves from the competitive labor market. The Legislature has already determined that they have a *minimum* earning capacity.

Issues substantially similar to the ones here were raised before Division One of the Fourth Appellate District in *Babin v. Workers' Comp. Appeals Bd.* (1996) 61 Cal.Comp.Cases 256 (*Babin*) and Division Three of the Second Appellate District in *DeLeon v. Workers' Comp. Appeals Bd.* (1999) 64 Cal.Comp.Cases 96 (*DeLeon*), where petitions for writ of review were denied by the reviewing courts. ■ "The denial of a petition for writ of review and/or the denial of hearing by our Supreme Court do not necessarily indicate the appellate courts' agreement with the board's decision regarding the issues presented. [Citation.]" (*Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 336, 347 [151 Cal.Rptr. 368].) Nevertheless the two earlier Board-level decisions, though not binding on this court, are instructive "to the extent that they point out the contemporaneous interpretation and application of the workers' compensation laws by the Board. [Citation.]" (*Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, fn. 2 [94 Cal.Rptr.2d 186].)

■ In *Babin,* a former state prison inmate who earned $2.77 per week at the time of his industrial injury, argued his average weekly earnings should be based on the maximum rate using his preincarceration earnings and his capacity for future earnings. The Board rejected his argument, reasoning inmate earnings were set at what the inmate could earn while incarcerated, and any other earning capacity computation was speculative. The reviewing court denied the former prisoner's petition for writ of review stating, "His prison weekly earnings of $2.77 per week justifying the minimum rate of benefits was supported by the evidence." (*Babin, supra,* 61 Cal.Comp.Cases at p. 260.)

In *DeLeon,* the applicant had been an inmate in state prison employed as a laborer at the time of injury. The Board found applicant's actual weekly earnings to be $7.60 per week. Applicant contended the Board should compute his weekly wages at a higher amount based on a post-prison work furlough training program, utilizing section 4453, subdivision (c)(4). That section provides: "where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which

reasonably represents the average weekly earning capacity of the injured employee at the time of his or her injury, due consideration being given to his or her actual earnings from all sources and employments." (§ 4453, subd. (c)(4).)

The Board rejected his argument, stating any prospective increase in the applicant's earning capacity, beyond his earnings while incarcerated, would be mere speculation. The reviewing court summarily denied the petition. (*DeLeon, supra,* 64 Cal.Comp.Cases at pp. 97-98.)

Stentz urges us to affirm the Board's use of earning capacity and application of section 4453, subdivision (c)(4) to his circumstances. In support, at oral argument he relied on *Grossmont Hospital v. Workers' Comp. Appeals Bd.* (1997) 59 Cal.App.4th 1348 [69 Cal.Rptr.2d 842] (*Grossmont*). There, a full-time hospital employee sustained industrial injury and was on temporary total disability status. While on leave, the employee received a wage increase. Her employer refused to raise her benefits accordingly, and the employee filed an application for a claim adjudication with the Board. The judge concluded the employee was entitled to an increase in her temporary disability rate, and when the Board denied the subsequent petition for reconsideration, employer petitioned for review.

The reviewing court held that "wage increases that were scheduled or reasonably anticipated at the time of injury and that would occur during the anticipated duration of the disability may be considered in determining the injured worker's 'earning capacity' and ultimately the benefits due. However, where the subsequent change in wages is not scheduled or reasonably anticipated at the time of injury or where it would not occur during the anticipated duration of the disability, it may not be considered." (*Grossmont, supra,* 59 Cal.App.4th at p. 1351.)

The court concluded that a scheduled wage increase is a factor to be taken into consideration in calculating earning capacity where its impact is "significant enough that it is unreasonable or unfair to use actual earnings at the time of injury to calculate temporary disability benefits . . . ." (*Grossmont, supra,* 59 Cal.App.4th at pp. 1362-1363.) The court annulled the Board's decision, however, explaining it was "not apparent whether the wage increase [in that case] was scheduled or reasonably anticipated at the time [the employee] was injured." (*Id.* at pp. 1363-1364.)

Neither *Grossmont* nor section 4453, subdivision (c)(4) supports Stentz's position. ■ The interpretation of a statute is a question of law for a reviewing court. ■ "It is a cardinal rule of statutory construction that in

attempting to ascertain the legislative intention, effect should be given as often as possible to the statute as a whole and to every word and clause, thereby leaving no part of the provision useless or deprived of meaning. [Citations.] In reviewing the Board's action in this case, it is our responsibility to construe the relevant subdivisions of section 4453 so that effect is given to all provisions, leaving no part superfluous or inoperative, void or insignificant and to make certain that one subdivision will not destroy another. [Citations.]" (*Pham v. Workers' Comp. Appeals Bd.* (2000) 78 Cal.App.4th 626, 634-635 [93 Cal.Rptr.2d 115].)

██ Considering prior earnings and postinjury employment potential to determine earning capacity is not necessary where the Legislature has already predetermined the minimum disability benefits allowable to state prison inmates. The language of 3370, subdivision (a)(5), in conjunction with section 4453, clearly limits this group of employees to minimum temporary disability rates based on actual earnings.

Further, like the applicants in *DeLeon* and *Babin*, Stentz presented no " 'specific demonstrative evidence that, but for the industrial injury, [he] would have had a true earning capacity that would make it unreasonable or unfair to use the actual average weekly earnings as the basis for determining the compensation rate.' " (*DeLeon, supra,* 64 Cal.Comp.Cases at p. 97.)

The Board erred in relying on an earning capacity computation and ignored the plain language of the applicable statutes. We are thus left with Stentz's actual prison weekly earnings, which we have previously noted equate to a TD benefit of $0.00 per week, exposing the lack of any substantial evidence to support the Board's award of $126 per week TD. (*LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].)

We note in closing that the Board was persuaded the Legislature intended state prisoners receive *some* amount of TD benefit after their release from prison. However, it fails to cite to any statutory or case authority for this proposition. We acknowledge that a harsh result may be the consequence of the application of these statutes. But any changes to the workers' compensation statutory scheme are within the province of the Legislature. (Cal. Const., art. XIV, § 4.)

As the California Supreme Court noted in *Meredith v. Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 777 [140 Cal.Rptr. 314, 567 P.2d 746]: "[T]he Legislature chose to limit [prison firefighters'] disability benefits. The limitation obviously is in recognition that the prisoner, having removed himself

from the competitive labor market, has neither significant earnings nor earning power, and when measured by salary at time of injury—the basic test—the prisoner ordinarily could not qualify for more than minimum disability compensation. Further, the normal obstacles faced by ex-prisoners in seeking employment upon release make any attempt to use the secondary measure—his earning *capacity*—speculative." (*Id.* at p. 782.)

## DISPOSITION

The decision of the Board after reconsideration determining that respondent Jerry Stentz, while employed as a sorter/steam cleaner as an inmate at San Luis Obispo, California, is entitled to temporary disability indemnity at the rate of $126 per week is annulled, and the matter is remanded to the Board for further proceedings consistent with the views expressed in this opinion. The parties shall bear their own costs on appeal.

Sills, P. J., and Fybel, J., concurred.