Filed 4/8/26  L.A. Dept. of Water and Power v. Workers' Compensation Appeals Bd. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

LOS ANGELES DEPARTMENT OF
WATER & POWER,

      Petitioner,

v.

WORKERS' COMPENSATION
APPEALS BOARD AND JEANETTE
FRANCE,

      Respondents.

E086551

(WCAB Nos. ADJ10738767
ADJ14240277-78)

OPINION

ORIGINAL PROCEEDINGS; petition for writ of review.  Petition granted.

Hallett, Emerick, Wells & Sareen and H. Neal Wells IV for Petitioner.

Jeanette France, in pro. per., for Respondent Jeanette France.

Allison J. Fairchild for Respondent Workers' Compensation Appeals Board.

1

The Los Angeles Department of Water and Power (DWP) seeks writ review of a decision by the Workers' Compensation Appeals Board (WCAB) finding that the DWP terminated Jeanette France in violation of Labor Code section 132a, which prohibits discharging an employee because they filed or threatened to file a workers' compensation claim. (Unlabeled statutory references are to the Labor Code.) We grant the petition and annul the WCAB's decision.

BACKGROUND

I. *France's employment with the DWP*

From June through September 2016, France worked as an occupational health nurse for the DWP through an employment agency called LifeLung, Inc. The DWP directly hired France effective September 27, 2016, to work in the same capacity. The DWP hired France by way of an emergency appointment outside of the regular civil service process.

France's immediate supervisor was Bedros Okhanes. He reported to the medical director, Dr. Leslie Michelle Israel. Okhanes died in 2022.

It is undisputed that on January 9, 2017, France was injured in the course and scope of her employment. She sustained injuries to her lower back and shoulder when a chair on which she was seated fell. On February 1, 2017, the DWP terminated France's employment. The DWP paid France temporary total disability benefits from February 2, 2017, through May 13, 2018.

II.     *The civil action*

In 2018, France filed a lawsuit against the DWP in the Los Angeles County Superior Court, alleging various claims under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), including a claim for disability discrimination and retaliation under Government Code section 12940, subdivisions (a) and (h).[1]  The alleged disability resulted from the work-related injuries that France sustained on January 9, 2017.  In December 2019, the superior court granted the DWP's motion for summary judgment.  The order granting summary judgment was admitted in the subsequent workers' compensation proceeding.

Applying the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-803, the superior court found that the DWP terminated France for a legitimate, nondiscriminatory reason, namely, poor job performance that predated her workplace injury.  The court relied on evidence from Okhanes and Israel about France's work performance issues.  Israel described numerous issues that she observed:  (1) On October 20, 2016, France did not conduct a pulmonary test properly, even though she had been trained on how to administer the test; (2) the next day, Israel noticed that France was not checking patients' identification before administering vaccines; and (3) in later October/early November, France "failed to put away vaccinations and failed to check and note the refrigerator temperature."  Okhanes stated

---

[1]     In support of the petition for review, the DWP submitted documents that were not admitted in the workers' compensation proceeding, including a copy of the original complaint filed in the civil proceeding.

3

that France made numerous errors in entering information into the DWP's health management system and incorrectly entered an employee's medical report, which caused the Department of Motor Vehicles to reject the report and thereby delayed the recertification of that employee's commercial driver's license. The court found that France failed to introduce evidence creating a disputed issue of fact as to whether the DWP's stated reason for terminating her employment was pretextual.

III.     *Workers' compensation benefits*

In addition to the FEHA action, France also filed a claim for workers' compensation benefits that was resolved in November 2023. A workers' compensation administrative law judge (workers' compensation judge) approved the parties' joint compromise and release and awarded France $35,000, less approximately $5,000 in attorney fees.

IV.     *The section 132a claim and proceedings*

In September 2017, France filed a petition with the WCAB in which she alleged that the DWP had wrongfully terminated her employment on February 1, 2017, in violation of section 132a. She alleged that the DWP fired her because she had filed or threatened to file a claim for workers' compensation benefits for the work-related injuries that she sustained on January 9, 2017.

A.     *The hearing*

Over the course of several days in 2024 and 2025, a workers' compensation judge held an administrative hearing on the section 132a claim. Both parties introduced

4

documentary evidence and witness testimony. France testified on her own behalf, and two witnesses testified for the DWP: (1) Israel, and (2) Deitra Barnett, the DWP's director of human resources. Okhanes was unavailable to testify because he had passed away in 2022.

1. *France's testimony*

Two weeks before France's emergency appointment began in September 2016, France signed a form indicating that she read and understood the following: "You are being considered for an emergency appointment since there is no one available on an eligible list. Such an appointment cannot last longer than 365 days. You may be terminated at any time, for any reason, while you are on an emergency appointment. An emergency appointment does not make you a regular city employee. Later, if qualified, you may take the examination and receive a regular civil service appointment, if your score is high enough."

On January 10, 2017, France told Okhanes and Israel that she had been injured at work the day before when a chair fell. France then filled out a workers' compensation form and went to a medical clinic. She returned to work with temporary restrictions that the DWP told her would be accommodated.

On February 1, 2017, the DWP terminated France's employment. France described what happened that day as follows: Israel sent France to the workers' compensation office, where France met with Okhanes and two employees of the workers' compensation department, Jeanette Romo and Andrea Karcher. They asked France to

5

sign a document that she described as a medical release and a workers' compensation form. France "told them she had a lawyer and asked them to send the document to her lawyer." France had not previously disclosed to the DWP that she had retained a lawyer for the workers' compensation matter.

Ten to 15 minutes after France returned to her desk, Israel asked France to come into her office, where France met with Israel and Barnett. Barnett told France that she was fired, asked for France's keys and badge, and gave France no explanation for the termination. Israel "did not have any paperwork or say anything about performance issues." Barnett accompanied France to her desk and then escorted France out of the building.

France said that during the course of her employment she was "never written up" or disciplined by the DWP. She also "never called off." France denied that Okhanes or Israel ever spoke to her about any issues with her performance.

In June 2018, Barnett responded to an email sent by France and stated: "In response to your question, you were terminated from your emergency appointment for poor work performance."

> 2. *The DWP's witnesses*

Barnett explained that the DWP is a department within the City of Los Angeles (the city), so it is a civil service organization and its personnel are government employees. Most of the positions at the DWP require prospective employees to take examinations and "get on the list" before they are hired. However, the city's charter

6

allows positions to be filled by temporary or emergency appointment if there is no current hiring list.  (Los Angeles City Charter, art. X, § 1013 (charter section 1013).)  An employee hired in an emergency capacity can work for a maximum of one year, with a possible six-month extension that is rarely granted.

Barnett explained that "once an exam is established for the position, it must end per the Charter."  In addition, an emergency hire can be ended "at any time" without cause, because the position is temporary.  No documentation of poor job performance is required to terminate the employment of an emergency hire.  The administrative manual setting forth the disciplinary guidelines for the DWP's civil service employees does not apply to emergency hires, whose employment is instead governed by charter section 1013.

The DWP submitted excerpts of the transcript of Okhanes's deposition, which was taken in October 2019.  Okhanes testified that when France was working as an emergency appointment occupational health nurse, the medical department was short of nurses.  Asked whether being understaffed created any problems, Okhanes replied that the DWP "did have problems actually with Jeanette France with her assignments."

Barnett explained that the DWP terminated France on February 1, 2017, because Israel decided to end the emergency appointment.  Israel had problems with France's performance and notified Barnett that there were performance issues.  Israel testified that she had spoken with France about several issues, but Israel could not recall when those conversations happened.  Israel said that the issues were:  France had not checked

patients' identification before administering vaccines; France left vaccines unrefrigerated, so they had to be discarded; and France failed to check a patient's blood pressure before administering a breathing test, which is important because a doctor must approve administration of the test to a patient with elevated blood pressure. In addition, Israel confirmed that Okhanes had told her that France's "performance was an issue." Barnett could not recall whether she ever communicated with Okhanes directly about France, but Barnett "heard [Okhanes] counseling or trying to deal with" France. Barnett understood that both Israel and Okhanes had spoken with France about performance issues.

In response to Israel's concerns about France's job performance, Barnett explained to Israel that France's job was "an emergency appointment that is supposed to help [the DWP] to not have a work stoppage. If the emergency appointment is not helping, then the emergency appointment can end . . . ." No cause for termination is required. The DWP therefore chose to end the emergency appointment "because of performance issues." Barnett explained: "Charter Section 1013 is titled Temporary Assignment as an emergency appointment. It is to help for emergencies to stop—or to ensure that public service continues; and [France] had poor job performance and [France was] not assisting in that; and so the emergency appointment was ended." Asked why France's employment was terminated, Israel replied: "As I recall, performance, and we were able to increase our nurse staffing."

Both Barnett and Israel stated that France's termination was not "in any way related to her workers' compensation injury." Israel did not know anything about the meeting that France had with Okhanes, Romo, and Karcher on February 1, 2017.

Barnett confirmed that because of France's status as an emergency appointment, no documentation of any performance issues was necessary. The DWP introduced two internal personnel forms stating that France's employment ended on February 1, 2017. France also introduced a duplicate copy of one of those forms. The document introduced by both parties is titled, "Payroll/Personnel Change Document." (Capitalization omitted.) France refers to it as a "Discharge Form." The form is dated February 8, 2017, and is unsigned. It states that France's employment ended on February 1, and it does not provide a reason for the termination. France asked Barnett to review that form and asked why the form did not state that France was terminated for "'poor job performance.'" Barnett answered: "It's not required to say that. This is a document to process in the system. It's a Personnel Action Notice."

The other form, introduced by the DWP but not by France, is entitled "Personnel Action Notice." It identifies the reason for termination as "39," but it does not provide a definition for that code. A comment field in the form reads: "Not willing to rehire."

B.       *Findings and order of the workers' compensation judge*

In March 2025, the workers' compensation judge issued their findings and order. The judge denied the section 132a claim and dismissed France's petition. The judge did not apply res judicata or collateral estoppel to the judgment in the FEHA action but took

9

notice of the superior "court's finding that [France's] employment was terminated due to poor performance which pre-dated her injury."  The workers' compensation judge "likewise found in the case at hand, based on the testimony and evidence presented during a three-day workers' compensation trial, that [France's] Emergency Appointment/Emergency Hire was terminated for legitimate nondiscriminatory reasons; i.e. poor performance that pre-dated the January 9, 2017 injury."

The workers' compensation judge additionally reasoned that even if France was terminated within 10 or 15 minutes after a meeting about workers' compensation, in which she told Okhanes and others that she had retained an attorney, France "failed to prove that the termination of her employment violated Labor Code Section 132a in light of evidence that the termination was due to poor performance.  In addition, [France] failed to produce any evidence that the people involved in the workers' compensation meeting communicated to the people present for the termination meeting during the 10 to 15 minutes between the two meetings.  [France] also failed to present any evidence that the people involved in the termination meeting knew about [France's] statement during the workers' compensation meeting and/or based the decision to terminate [France's] employment on that statement or [France's] having filed a claim for workers' compensation benefits."

C.    *The WCAB decision on reconsideration*

France petitioned for reconsideration. The WCAB granted the petition, rescinded the opinion of the workers' compensation judge, and substituted new findings of fact in which it found that the DWP's termination of France violated section 132a.

Based on its "independent review of the entire record," the WCAB concluded that the DWP did not carry "its burden of establishing that good cause existed for [France's] termination on February 1, 2017." In support of that conclusion, the WCAB noted that the record contained no evidence of "write-ups, disciplinary actions, warnings or other corrective action taken while [France] was employed," and the DWP's records concerning her termination did not "mention poor job performance or any other reason for [France's] discharge." The WCAB also noted that Israel could not recall when the two performance issues that she observed occurred, and she "could not confirm . . . why they were not documented."

The WCAB reasoned: "Over multiple days of trial proceedings, [the DWP] interposed no witness testimony independently confirming any other work performance issues or advice to [France] regarding those alleged issues. Medical director Dr. Israel testified that any documentation of job performance issues would have been the responsibility of [France's] supervisor, Mr. Okhanes. However, Mr. Okhanes did not testify in these proceedings. . . . None of the defense witnesses could independently verify that [France's] job performance . . . was the reason for [France's] termination." In summary, the WCAB found that "the evidentiary record offers no persuasive

11

documentary evidence of poor work performance, or when any of the alleged deficiencies occurred, no testimony from applicant's supervisor, and no evidence in defendant's own termination paperwork that applicant was discharged for performance issues or what those issues were."

The WCAB awarded France increased compensation, costs and expenses, reinstatement, and reimbursement for lost wages and work benefits.

DISCUSSION

The DWP argues that the WCAB erred by ignoring evidence favorable to the DWP. We agree.[2]

Section 132a declares that it is the "policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment." An employer who discharges an employee for filing, or making known their intention to file, a workers' compensation claim violates section 132a. (§ 132a, subd. (1); *Crown Appliance v. Workers' Comp. Appeals Bd.* (2004) 115 Cal.App.4th 620, 624.) Liability under section 132a "attaches regardless of the employer's intentions." (*Crown Appliance*, at p. 624.) An employee makes a prima facie showing of

---

[2]  At oral argument, counsel for the WCAB contended that the reporter's transcript of the February 2025 hearing, at which both Barnett and Israel testified, was not available to the WCAB when it issued its decision. The contention is based entirely on matters outside the certified record, so we cannot consider it. (§ 5951.) The reporter's transcript of the February 2025 hearing is part of the record of proceedings that counsel for the WCAB certified is "a full, true and correct copy of the record of proceedings (consisting of 9 volumes) before the Appeals Board in the above-entitled matter involving a claim by Jeanette France." We also note that the reporter's transcript of the February 2025 hearing was certified by the reporter in April 2025, and the WCAB issued its decision in June 2025.

12

discrimination under section 132a by proving by a preponderance of the evidence "that 'as the result of an industrial injury, the employer engaged in conduct detrimental to the worker.'" (*Crown Appliance*, at p. 624; *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1298.) If the employee makes that showing, "the burden shifts to the employer to demonstrate that its conduct was necessary and directly linked to the realities of doing business." (*Crown Appliance*, at pp. 624-625.)

On reconsideration of a ruling by a workers' compensation judge, the WCAB is empowered "to resolve conflicts in the evidence, to make its own credibility determinations, and to reject the findings of the [workers' compensation judge] and [to] enter its own findings on the basis of its review of the record; nevertheless, any award, order or decision of the Board must be supported by substantial evidence in the light of the entire record." (*Bracken v. Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 255 (*Bracken*).) But the WCAB cannot meet that standard "by simply isolating evidence which supports the Board and ignoring other relevant facts of record which rebut or explain the evidence." (*Ibid.*; *Lamb v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 281; *Garza v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317.)

Section 5952 governs our review of a WCAB decision. We "determine, based upon the entire record" certified by the WCAB, whether the WCAB "acted without or in excess of its powers," "[t]he order, decision, or award was unreasonable," or "[t]he order, decision, or award was not supported by substantial evidence." (§ 5952, subds. (a), (c)-(d).) We determine whether the evidence, when viewed in light of the entire record,

13

supports the WCAB's decision. (*Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 535.) We do not "'reweigh the evidence or decide disputed questions of fact.'" (*Id.* at pp. 535-536.) We are not bound to accept the factual findings of the WCAB if those findings "are illogical, unreasonable, or improbable," or if they "do not withstand scrutiny when considered in light of the entire record." (*Bracken*, *supra*, 214 Cal.App.3d at p. 254; *Travelers Property Casualty Co. of America v. Workers' Comp. Appeals Bd.* (2019) 40 Cal.App.5th 728, 737; *Rouseyrol v. Workers' Comp. Appeals Bd.* (1991) 234 Cal.App.3d 1476, 1483.)

The WCAB's determination that the DWP did not carry its burden of establishing that it terminated France for poor job performance is unreasonable, because the WCAB ignored relevant evidence and mischaracterized the record. The determination is based on the WCAB's findings that (1) no defense witnesses independently verified "that job performance was the reason for [France's] termination," (2) Barnett testified that France was instead "terminated because she was at the end of an emergency appointment," (3) there was "no testimony from [France's] supervisor," (4) no "defense witnesses could independently verify that [France's] job performance failed to meet applicable standards," (5) there was no evidence showing when Israel had issues with France's job performance or why the issues were not documented, and (6) the DWP's internal "termination paperwork" did not document that France was terminated for poor job performance. None of those findings is reasonable when viewed in light of the entire record.

14

The record directly contradicts the WCAB's findings that no one testified that France was terminated for poor job performance and that Barnett testified that the DWP terminated France only because it ended the emergency appointment. Although Barnett did testify that France's employment was terminated because the DWP chose to end the emergency appointment, she also testified that the appointment was ended *because* France "had poor job performance." France questioned Barnett about why she was discharged, and Barnett explained that an emergency appointment exists to help the DWP with emergencies "or to ensure that public service continues; and you had poor job performance and you were not assisting in that; and so the emergency appointment was ended." The WCAB ignored and misrepresented that testimony. The testimony contradicts the WCAB's findings that no one testified that the DWP terminated France for poor job performance, and it shows that the reason that the DWP ended the emergency appointment was France's poor performance. Moreover, Israel also testified that the DWP terminated France because of performance issues. Thus, contrary to the WCAB's finding, both Barnett and Israel testified "that job performance was the reason for [France's] termination." The WCAB was free to decline to credit their testimony, but it was not free to ignore it completely. (*Bracken*, *supra*, 214 Cal.App.3d at p. 255.)

It also was not reasonable for the WCAB to discredit Israel's testimony about her concerns about France's job performance on the basis that Israel could not recall when the problems arose. The WCAB's reasoning ignores evidence in the record, namely, the superior court's order granting the DWP's motion for summary judgment, which

15

describes a declaration that Israel submitted in support of the motion. Israel described problems with France's performance that occurred in October and November 2016, well before France sustained the work-related injury. Because the record contains evidence from Israel showing when the problems occurred, it was unreasonable for the WCAB to discredit Israel's testimony about those issues on the ground that when Israel testified in the workers' compensation proceeding eight years later, she could not remember those dates. Again, the WCAB could have chosen to discredit Israel's testimony upon consideration of all of the evidence, but it was not free to ignore evidence showing when she had issues with France's performance and then to discount Israel's testimony on the ground that there was no such evidence. (*Bracken*, *supra*, 214 Cal.App.3d at p. 255.)

The record contains additional evidence of France's poor job performance that the WCAB ignored. Okhanes was France's direct supervisor, and he testified at a deposition in 2019 that while France was employed as an emergency hire she had "problems . . . with her assignments." It was particularly unreasonable for the WCAB to ignore the record evidence of Okhanes's deposition testimony, because Okhanes's death in 2022 made it impossible for him to testify at the workers' compensation hearing in 2024 and 2025. Moreover, Barnett's testimony that she overheard Okhanes "counseling or trying to deal with" France corroborates Okhanes's deposition testimony that he had issues with France's performance. But the WCAB ignored that portion of Barnett's testimony as well.

16

The WCAB also ignored Barnett's testimony explaining the lack of documentation of France's poor job performance. Barnett testified that because of France's status as an emergency hire, no documentation of poor job performance was needed to end the appointment and terminate her. Given that the record contained a reasonable explanation for the lack of documentation of the issues that Israel had with France's performance, it was unreasonable for the WCAB to discount Israel's testimony on the ground that she failed to explain why the issues were not documented without acknowledging the other evidence that did provide an explanation. Moreover, the WCAB also ignored Barnett's testimony that the February 1, 2017, "discharge form" did not specify that Barnett was terminated because of poor job performance because that form is "not required to say that." She explained that the document is merely an internal form that is used to process a personnel action; it is just "a document to process in the system." Again, the WCAB was free to give little or no weight to Barnett's explanation about the lack of documentation, but it was not free to ignore the evidence. (*Bracken*, *supra*, 214 Cal.App.3d at p. 255.)

We are not bound to accept the WCAB's factual findings if they are unreasonable and "do not withstand scrutiny when viewed in light of the entire record." (*Bracken*, *supra*, 214 Cal.App.3d at p. 257.) We conclude that the WCAB's determination that the DWP violated section 132a was unreasonable because the WCAB ignored relevant evidence. The WCAB's decision therefore is not "based upon the entire record." (§ 5952.) We accordingly annul the WCAB's decision (§ 5953) and order the WCAB to

17

reinstate the workers' compensation judge's initial award (*Redner v. Workmens' Comp. Appeals Bd.* (1971) 5 Cal.3d 83, 97).

DISPOSITION

The June 18, 2025, decision of the WCAB is annulled and reversed. The WCAB is directed to reinstate the March 24, 2025, order of the workers' compensation judge.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
                                                                    J.

We concur:

RAMIREZ
            P. J.

MILLER
            J.