[No. A116145. First Dist., Div. Four. May 23, 2007.]

COSTCO WHOLESALE CORPORATION et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and JORGE CHAVEZ,
Respondents.

**COUNSEL**

Mullen & Filippi, Jerome D. Young and Karen T. Dutton for Petitioners.

No appearance for Respondent Workers' Compensation Appeals Board.

Smith & Baltaxe and Byron T. Smith for Respondent Jorge Chavez.

Frailing, Rockwell & Kelly and David N. Rockwell for California Applicants' Attorneys Association as Amicus Curiae on behalf of Respondent Jorge Chavez.

## OPINION

**RIVERA, J.**—Costco Wholesale Corporation and its third party claims administrator Sedgwick Claims Management Services (collectively, Costco) petitioned for review of the decision of the Workers' Compensation Appeals Board (Board) affirming an award to respondent Jorge Chavez (Chavez). Costco contends the award was improperly calculated using the 1997 schedule for rating permanent disabilities that was in effect before January 1, 2005, rather than the new schedule that went into effect on that date. We agree and annul the award.

## I. BACKGROUND

Chavez was employed at a Costco warehouse in Novato. On June 5, 2004, he slipped and fell during the course of his employment, injuring his back, elbow and hip. Chavez was off work for two days and then placed on light duty work, which he continued to do until he was terminated in late 2004.

In September 2004, Chavez was evaluated by Vatche Cabayan, M.D., an orthopedic surgeon and qualified medical examiner. Dr. Cabayan issued a report on September 24, 2004, in which he recommended additional treatment and upgraded Chavez's lifting restrictions. The report stated, "The patient is not permanent and stationary at this time," and opined that Chavez was "expected to be permanent and stationary hopefully in the next 90 days to 120 days." The report did not state whether any of Chavez's conditions would result in permanent disability. Moses Jacob, D.C., issued a report on October 25, 2005, diagnosing Chavez with back strain, joint disease, and elbow strain and declaring these conditions to be permanent and stationary.

A trial was held before a workers' compensation judge (WCJ). One of the issues presented was whether permanent disability should be rated using the 1997 schedule that was in effect at the time of Chavez's injury in 2004 or the schedule that went into effect on January 1, 2005. The WCJ issued an award that included permanent disability based on the 1997 schedule, a decision that was affirmed by the Board following a petition for reconsideration.

## II. DISCUSSION

### A. *Introduction*

Labor Code section 4660[1] governs the calculation of the percentage of permanent disability. Effective April 19, 2004, that statute was amended as

---

[1] Further statutory references are to the Labor Code.

part of Senate Bill No. 899 (2003–2004 Reg. Sess.), a comprehensive workers' compensation reform package, to require regular revisions of the permanent disability rating schedule. A new rating schedule incorporating the American Medical Association Guides to the Evaluation of Permanent Impairment (5th ed.) went into effect on January 1, 2005. This schedule superseded the 1997 rating schedule that was in effect when Chavez was injured in 2004. (See *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2007) 146 Cal.App.4th 1311, 1313 [53 Cal.Rptr.3d 568].)

■ Section 4660, subdivision (d), provides in relevant part that "[t]he schedule and any amendment thereto or revision thereof shall apply prospectively and shall apply to and govern only those permanent disabilities that result from compensable injuries received or occurring on and after the effective date of the adoption of the schedule . . . ." The statute then lists three exceptions to the rule that the date of injury governs the schedule to be applied. For compensable injuries occurring before 2005, the 2005 schedule will apply when, before January 1, 2005, "there has been either no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability, or when the employer is not required to provide the notice required by Section 4061 to the injured worker." (§ 4660, subd. (d).) In other words, when any of these three circumstances have occurred before January 1, 2005, the percentage of permanent disability will be calculated using the earlier schedule that was in effect on the date of the injury.[2]

The Board concluded that the 1997 schedule applied to Chavez's injury because the report issued by Dr. Cabayan on September 24, 2004, was a qualifying comprehensive medical-legal report. It adopted a finding by the WCJ that the report indicated "the existence of permanent disability," but concluded that such a finding was unnecessary. The Board reasoned, "The correct construction of the pertinent sentence, *'when there has been either no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability,'* requires a report by a

---

[2] The full text of section 4660, subdivision (d), states: "The schedule shall promote consistency, uniformity, and objectivity. The schedule and any amendment thereto or revision thereof shall apply prospectively and shall apply to and govern only those permanent disabilities that result from compensable injuries received or occurring on and after the effective date of the adoption of the schedule, amendment or revision, as the fact may be. For compensable claims arising before January 1, 2005, the schedule as revised pursuant to changes made in legislation enacted during the 2003–04 Regular and Extraordinary Sessions shall apply to the determination of permanent disabilities when there has been either no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability, or when the employer is not required to provide the notice required by Section 4061 to the injured worker."

treating physician to indicate the existence of permanent disability, while a comprehensive medical-legal report does not require an indication of permanent disability."

## B. *"Comprehensive Medical-Legal Report"*

Costco asserts that the phrase "indicating the existence of permanent disability" applies both to a report by a treating physician and to a comprehensive medical-legal report. It contends the Board's decision must be annulled because the medical-legal report prepared by Dr. Cabayan on September 24, 2004, did not indicate the existence of permanent disability. We agree.

"The Board's conclusions on questions of law do not bind this court." (*Kuykendall v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 396, 402 [94 Cal.Rptr.2d 130].) The interpretation of section 4660, subdivision (d), and its phrase "no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability," is a legal issue subject to our de novo review (*Kuykendall, supra,* 79 Cal.App.4th at p. 402; *California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 358, 362 [5 Cal.Rptr.3d 127]).

In construing section 4660, subdivision (d), the Board relied on the "last antecedent rule" of statutory construction, which generally provides that " 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' " (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191].) The Board reasoned that the lack of a comma after the word "physician" in the phrase, "no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability" (§ 4660, subd. (d)) signifies that the Legislature intended the words "indicating the existence of permanent disability" to apply only to the immediate antecedent—the report by a treating physician. "Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." (*White v. County of Sacramento, supra,* 31 Cal.3d at p. 680; see also *Garcetti v. Superior Court* (2000) 85 Cal.App.4th 1113, 1120 [102 Cal.Rptr.2d 703].)

Although grammatically sound, this interpretation of the statute is unpersuasive. "The rules of grammar and canons of construction are but tools, 'guides to help courts determine likely legislative intent. [Citations.] And that intent is critical. Those who write statutes seek to solve human problems. Fidelity to their aims requires us to approach an interpretive

problem not as if it were a purely logical game, like a Rubik's Cube, but as an effort to divine the human intent that underlies the statute.' " (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1017 [22 Cal.Rptr.3d 876, 103 P.3d 276].)

The human problem to be solved by section 4660, subdivision (d), is the rating of permanent disability. That statute provides that the new rating schedule will apply to pre-2005 injuries unless one of three circumstances have occurred before 2005. One such circumstance is the preparation of a physician's report indicating the existence of permanent disability. Another (discussed more fully below) is the obligation of the employer to serve notice under section 4061, which advises the employee of the employer's position regarding the entitlement to permanent disability at the time the last payment of temporary disability is made. These two circumstances are clearly tied to a determination of permanent disability before January 1, 2005. We can conceive of no rational basis for the Legislature to include a third circumstance—the comprehensive medical-legal report at issue here—unless it was tethered to a similar requirement. A pre-2005 medical-legal report written about issues other than permanent disability, or a report that considered the issue but found no permanent disability, would supply no logical basis for applying the earlier rating schedule. It makes little sense to construe the statute as Chavez suggests, and hold that *any* medical-legal report could suffice, when the syntax of the statute is amenable to a construction that requires those reports to contain an indication of permanent disability. (See *Burris v. Superior Court, supra*, 34 Cal.4th at p. 1018.)

■ The last antecedent rule does not trump these considerations. One exception to that rule exists when " ' " 'several words are followed by a clause which is applicable as much to the first and other words as to the last, [and] the natural construction of the language demands that the clause be read as applicable to all.' " ' " (*Garcetti v. Superior Court, supra*, 85 Cal.App.4th at p. 1121.) A second exception is made when " 'the sense of the entire act requires that a qualifying word or phrase apply to several preceding [words] . . . .' " "This is, of course, but another way of stating the fundamental rule that a court is to construe a statute ' "so as to effectuate the purpose of the law." ' " (*White v. County of Sacramento, supra*, 31 Cal.3d at p. 681.) Our reading of section 4660 as a whole is to require that the implementation of the new permanent disability rating schedule be tied to an actual indication of permanent disability prior to the statute's effective date. It follows that the requirement of an indication of permanent disability would apply to medical-legal reports as well as to reports prepared by a treating physician.

Chavez's proposed construction of section 4660, subdivision (d), to require no indication of permanent disability in a comprehensive medical-legal

report, would be contrary to the spirit of the statute and the workers' compensation reform package as a whole. Those reforms were enacted as urgency legislation to drastically reduce the cost of workers' compensation insurance, and the Legislature intended that the majority of the changes go into effect as soon as possible. (Stats. 2004, ch. 34, § 49; *Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1329 [57 Cal.Rptr.3d 644]; *Green v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 1426, 1441 [26 Cal.Rptr.3d 527].) The adoption of a new permanent disability rating scale was part of this scheme. The purpose of the reform package is not served by an interpretation of section 4660, subdivision (d), that delays the implementation of the new rating scale based on medical-legal reports that give no indication of permanent disability, and indeed, may have nothing to do with that subject.

Finally, we observe that section 4658, subdivision (d)(4), is a parallel provision that pertains to the computation of permanent disability payments and contains the necessary comma that Chavez claims is missing in section 4660, subdivision (d): "For compensable claims arising before April 30, 2004, the schedule provided in this subdivision shall not apply to the determination of permanent disabilities when there has been either *a comprehensive medical-legal report or a report by a treating physician, indicating the existence of a permanent disability*, or when the employer is required to provide the notice required by Section 4061 to the injured worker." (Italics added.) There would be no reason for the Legislature to have a different type of medical-legal report serve as the demarcation for permanent disability ratings and permanent disability compensation schedules.

█ We hold that under section 4660, subdivision (d), a medical-legal report, like a treating physician's report, must contain an indication of permanent disability to trigger use of the pre-2005 rating schedule. █ Although the WCJ and the Board both found that Dr. Cabayan's 2004 report indicated the existence of permanent disability, this finding is not supported by substantial evidence. (See *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd., supra*, 146 Cal.App.4th at p. 1315.) The report stated that Chavez's condition was not permanent and stationary and it gave no opinion whatsoever about whether Chavez would suffer from permanent disability. Chavez has tacitly acknowledged as much by his failure to offer any argument regarding the evidence of permanent disability in opposition to Costco's writ. The Board's rating of permanent disability under the 1997

schedule cannot be upheld on the basis of a pre-2005 medical-legal report because there was no qualifying report indicating the existence of permanent disability.[3]

## C. *Notice Under Section 4061*

Chavez argues that the Board's decision should be upheld because a second circumstance listed in section 4660, subdivision (d), rendered the 1997 schedule applicable to his case. He contends that prior to January 1, 2005, Costco was required to provide the notice required by section 4061 to the injured worker, thus triggering the earlier schedule. We disagree.[4]

Section 4061 provides in relevant part, "(a) Together with the last payment of temporary disability indemnity, the employer shall, in a form prescribed by the administrative director pursuant to Section 138.4, provide the employee one of the following: [¶] (1) Notice either that no permanent disability indemnity will be paid because the employer alleges the employee has no permanent impairment or limitations resulting from the injury or notice of the amount of permanent disability indemnity determined by the employer to be payable. . . . [¶] (2) Notice that permanent disability indemnity may be or is payable, but that the amount cannot be determined because the employee's medical condition is not yet permanent and stationary. . . ."

Temporary disability benefits were paid to Chavez from October 20, 2004, until June 28, 2005. Costco was required to provide notice under section 4061, "[t]ogether with the last payment of temporary disability indemnity" in June 2005. Because that notice was not required before January 1, 2005, the 2005 permanent disability rating schedule applies to Chavez's case.

Chavez argues that Costco was required to give notice under section 4061 before January 1, 2005, because the duty to provide such notice arises when temporary disability payments are commenced rather than when they are

[3] Since issuing its opinion in the instant case, the Board has reversed its position and now construes the phrase "indicating the existence of permanent disability" to apply to comprehensive medical-legal reports as well as treating physicians' reports. (*Baglione v. Hertz Car Sales* (2007) 72 Cal.Comp.Cases 444.) The en banc decision in *Baglione* is not binding on this court, but we consider it for the limited purpose of pointing out the contemporaneous interpretation and application of the workers' compensation laws by the Board. (*Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, fn. 2 [94 Cal.Rptr.2d 186].)

[4] Although this was not the basis for the Board's decision, we consider the argument on the merits because the notice requirement was discussed by the parties in the trial briefs before the WCJ and because an administrative agency's erroneous reasoning is generally not prejudicial error where the result is correct. (See *Board of Administration v. Superior Court* (1975) 50 Cal.App.3d 314, 319 [123 Cal.Rptr. 530].)

terminated.[5] While the statute is not a model of linguistic clarity, its intent is clear. The intent is to apply the rating schedule in effect on the date of injury to injuries suffered prior to 2005 in only three circumstances: (1) when a comprehensive medical-legal report issued prior to 2005 indicates permanent disability, (2) when a report from a treating physician issued prior to 2005 indicates permanent disability, and (3) when an employer has been required to give notice under section 4061 prior to 2005 concerning its intentions regarding payment of permanent disability benefits. This interpretation supports the legislative goal of bringing as many cases as possible under the new workers' compensation law. (See Stats. 2004, ch. 34, § 49; *Green v. Workers' Comp. Appeals Bd., supra,* 127 Cal.App.4th at p. 1441.) If, as Chavez argues, the commencement of any temporary disability payments before 2005 required application of the rating schedule in effect at the time of injury, this legislative goal would be defeated. It would be rare, indeed, for temporary disability payments not to be owed or paid prior to 2005 for an injury occurring in or before 2004. Such a limited exception would be pointless where the Legislature could more easily have drafted the statute to apply the schedule in effect on the date of injury in all cases.

■ Chavez's proposed interpretation of the section 4061 notice exception under section 4660, subdivision (d), would also render meaningless that portion of the statute that requires application of the 2005 schedule if, before 2005, there was "no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability . . . ." Temporary disability will have been paid or owed before January 1, 2005, in virtually every case where a qualified medical examiner or doctor prepared a pre-2005 medical report indicating permanent disability, meaning there would be no practical need for the other two exceptions. " '[A]n interpretation that renders statutory language a nullity is obviously to be avoided.' " (*Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914, 937 [42 Cal.Rptr.3d 96].)

Because it is uncontested that the last temporary disability payment to Chavez was made after January 1, 2005, and because, as previously discussed, no pre-2005 medical-legal report indicated the existence of permanent disability, Chavez's permanent disability must be rated under the 2005 schedule.

---

[5] A similar argument was recently rejected by the Board in its en banc decision in *Pendergrass v. Duggan Plumbing and State Compensation Insurance Fund* (2007) 72 Cal.Comp.Cases 456.

## III.  DISPOSITION

The petition for writ of review is granted. That portion of the award applying the 1997 permanent disability rating schedule is annulled, and the case is remanded for recalculation of Chavez's permanent disability rating under the schedule that went into effect on January 1, 2005. In all other respects, the award is affirmed. The parties shall bear their own costs herein.

Ruvolo, P. J., and Reardon, J., concurred.

On June 14, 2007, the opinion was modified to read as printed above.