[No. C055273. Third Dist. July 24, 2007.]

ENERGETIC PAINTING AND DRYWALL, INC., et al., Petitioners, v. WORKERS' COMPENSATION APPEALS BOARD and JOSE REYES RAMIREZ, Respondents.

634

**COUNSEL**

Lenahan, Lee, Slater & Pearse and Peter O. Slater for Petitioners.

No appearance on behalf of Respondents.

**OPINION**

**ROBIE, J.**—In this case again we are called upon to interpret changes made in California's workers' compensation law in 2004. Jose Reyes Ramirez injured his back and neck on the job in July 2004 and received temporary disability benefits for the period from July 13, 2004, through March 24, 2005. The question here is whether—based on the date of Ramirez's injury and the dates his temporary disability benefits began and ended—the workers' compensation administrative law judge (WCJ) properly calculated Ramirez's permanent disability award using the 1997 schedule for rating permanent disabilities, rather than the 2005 rating schedule. As we will explain, we agree with petitioners Energetic Painting and Drywall, Inc., and its insurer Zurich North America Insurance Company[1] that the WCJ used the wrong schedule. Accordingly, we will annul the order denying Energetic's petition for reconsideration and remand the case for recalculation of Ramirez's permanent disability rating.

---

[1] We will refer to the two petitioners jointly as Energetic.

## DISCUSSION

In 2004, the Legislature enacted omnibus modification of the workers' compensation system. As pertinent here, Senate Bill No. 899 (2003–2004 Reg. Sess.) amended Labor Code[2] section 4660, which governs the calculation of the percentage of permanent disability. The amended statute required the administrative director to formulate a new rating schedule. (§ 4660, subd. (b)(2).) That new schedule went into effect on January 1, 2005, superseding the 1997 rating schedule previously in effect. (See *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2007) 146 Cal.App.4th 1311, 1313 [53 Cal.Rptr.3d 568].)

Subdivision (d) of section 4660 (section 4660(d)) provides in relevant part that "[t]he [2005] schedule . . . shall apply prospectively and shall apply to and govern only those permanent disabilities that result from compensable injuries received or occurring on and after the effective date of the adoption of the schedule . . . . For compensable claims arising before January 1, 2005, the [2005] schedule . . . shall apply to the determination of permanent disabilities when there has been either no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability, or when the employer is not required to provide the notice required by Section 4061 to the injured worker."

■ "While the statute is not a model of linguistic clarity, its intent is clear." (*Costco Wholesale Corp. v. Workers' Comp. Appeals Bd.* (2007) 151 Cal.App.4th 148, 157 [59 Cal.Rptr.3d 611].) "[W]hen any of the[] three circumstances [described in the final sentence of section 4660(d)] have occurred before January 1, 2005, the percentage of permanent disability will be calculated using the earlier schedule *that was in effect on the date of the injury.*" (*Costco Wholesale*, at p. 152.) On the other hand, when *none* of the three circumstances has occurred before January 1, 2005, then the 2005 schedule applies.

■ This case involves the proper application of the third circumstance described in section 4660(d)—specifically, "when the employer is not required to provide the notice required by Section 4061 to the injured worker." Subdivision (a) of section 4061 provides that "[t]ogether with the last payment of temporary disability indemnity, the employer shall . . . provide the employee" with a certain type of notice regarding permanent disability (hereafter the section 4061 notice).[3] Thus, if the employer was required to

---

[2] All further statutory references are to the Labor Code unless otherwise indicated.

[3] Specifically, the employer must give the employee "[n]otice . . . that no permanent disability indemnity will be paid because the employer alleges the employee has no permanent impairment or limitations resulting from the injury," "notice of the amount of permanent dis-

provide the section 4061 notice to the injured worker before January 1, 2005, then the schedule in effect on the date of injury is to be applied in determining the extent of permanent disability; otherwise, the 2005 schedule is to be applied.[4]

Adopting the reasoning of two earlier decisions by panels of the Workers' Compensation Appeals Board (WCAB), the WCJ in this case decided that the percentage of Ramirez's permanent disability was to be determined under the 1997 schedule (which was in effect at the time of Ramirez's injury) because the WCAB panels had "distinguished between when a duty to provide a notice pursuant to Labor Code § 4660(d) arises from when it must be executed." Under the panels' reasoning, "the duty to provide the notice mentioned in § 4660(d) arises when temporary disability is [first] paid"; therefore, "the 1997 permanent disability rating schedule must be applied" "when any temporary disability is paid in 2004." Because Ramirez's temporary disability benefits began in 2004, the WCJ concluded that the extent of his permanent disability had to be determined under the 1997 schedule.

In December 2006, Energetic petitioned the WCAB for reconsideration of the WCJ's decision to apply the 1997 schedule. While that petition was pending, the WCAB (sitting en banc) decided *Pendergrass v. Duggan Plumbing* (2007) 72 Cal.Comp.Cases 95. In *Pendergrass*, a four-member majority of the WCAB agreed with the reasoning of the panel decisions on which the WCJ in this case had relied. According to the majority, "the employer 'is required' to provide the notice required by section 4061 once the first payment of temporary disability indemnity is made, although the timing of the notice is contingent on the duration of temporary disability indemnity." (*Id.* at p. 99.) "Therefore, if the first date of compensable temporary disability occurred prior to January 1, 2005, then the 1997 Schedule applies to determine the extent of permanent disability." (*Id.* at p. 96.)

The three dissenting members of the WCAB concluded that the "plain language" of sections 4061 and 4660(d) required a different result. (*Pendergrass v. Duggan Plumbing, supra,* 72 Cal.Comp.Cases at p. 100 (dis.

---

ability indemnity determined by the employer to be payable," or "[n]otice that permanent disability indemnity may be or is payable, but that the amount cannot be determined because the employee's medical condition is not yet permanent and stationary." (§ 4061, subd. (a)(1), (2).)

[4] Of course, the schedule in effect on the date of injury also must be applied if either of the other two circumstances described in section 4660(d) occurred before 2005. Here, neither of those circumstances is at issue. Thus, we are concerned only with whether Energetic was required to provide Ramirez with the section 4061 notice before January 1, 2005.

opn. of Miller).) In their view, the "obligation to provide notice [does] not arise until the actual last payment of temporary disability indemnity." (*Ibid.*)

Relying on the majority's decision in *Pendergrass*, the WCAB denied Energetic's petition for reconsideration in February 2007. Energetic subsequently petitioned this court for review. While that petition was pending, the WCAB granted reconsideration in *Pendergrass* and in April 2007 issued a new opinion in which the former dissenting view now became the majority (and vice versa).[5] (*Pendergrass v. Duggan Plumbing, supra,* 72 Cal.Comp.Cases 456.)

■ In May 2007, we issued a writ of review in this case to decide the proper interpretation of section 4660(d). Subsequently, Division Four of the Court of Appeal, First Appellate District addressed the issue in *Costco Wholesale Corp. v. Workers' Comp. Appeals Bd.* The *Costco* court agreed with the new majority in *Pendergrass* that an employer "is required" to give notice under section 4061 within the meaning of section 4660(d) when the employer makes the last payment of temporary disability benefits, not when those payments commence. (*Costco Wholesale Corp. v. Workers' Comp. Appeals Bd., supra,* 151 Cal.App.4th at p. 155.) According to the *Costco* court, "the legislative goal" behind section 4660(d) was to bring "as many cases as possible under the new workers' compensation law. (See Stats. 2004, ch. 34, § 49; *Green v. Workers' Comp. Appeals Bd.* [(2005)] 127 Cal.App.4th [1426,] 1441 [26 Cal.Rptr.3d 527].) If . . . the commencement of any temporary disability payments before 2005 required application of the rating schedule in effect at the time of injury, this legislative goal would be defeated. It would be rare, indeed, for temporary disability payments not to be owed or paid prior to 2005 for an injury occurring in or before 2004. Such a limited exception would be pointless where the Legislature could more easily have drafted the statute to apply the schedule in effect on the date of injury in all cases." (*Costco Wholesale Corp. v. Workers' Comp. Appeals Bd., supra,* 151 Cal.App.4th at p. 157.)

■ The *Costco* court also explained that if section 4660(d) were interpreted to require the 1997 schedule to be applied whenever temporary disability benefits were paid before 2005, it would "render meaningless that portion of the statute that requires application of the 2005 schedule if, before

---

[5] The explanation for this about-face lies in the fact that the composition of the WCAB changed after the original en banc decision in *Pendergrass*, and the new board member agreed with the three members who had dissented originally. (See *Pendergrass v. Duggan Plumbing* (2007) 72 Cal.Comp.Cases 456, 459.)

A petition for writ of review in *Pendergrass* is now pending in the Sixth Appellate District. (*Pendergrass v. Workers' Compensation Appeals Board* (H031562, petn. filed May 21, 2007).)

2005, there was 'no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability . . . .' Temporary disability will have been paid or owed before January 1, 2005, in virtually every case where a qualified medical examiner or doctor prepared a pre-2005 medical report indicating permanent disability, meaning there would be no practical need for the other two exceptions. ' "[A]n interpretation that renders statutory language a nullity is obviously to be avoided." ' (*Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914, 937 [42 Cal.Rptr.3d 96].)" (*Costco Wholesale Corp. v. Workers' Comp. Appeals Bd.*, *supra*, 151 Cal.App.4th at p. 157.)

■ We wholeheartedly agree with the *Costco* court's interpretation of section 4660(d), which we believe is compelled by the plain language of sections 4061 and 4660(d). Because section 4061 provides that the employer must give the notice required by that statute to the injured worker "[t]ogether with the last payment of temporary disability indemnity," it follows as a matter of simple reasoning that an employer is "not required" to provide that notice (within the meaning of section 4660(d)) until the last temporary disability payment is made or has become due. To conclude, as the original majority in *Pendergrass* did, that an employer is required to provide the section 4061 notice as soon as the first payment of temporary disability indemnity is made, even though that requirement does not have to be satisfied until the last payment is made, simply stretches the statutory language beyond its plain and ordinary meaning.

■ "Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].)

■ Here, the plain meaning of the operative statutes compels the conclusion that Energetic was "not required" to provide Ramirez with the section 4061 notice until March 2005, when Ramirez's temporary disability benefits ended. Since Energetic was not required to provide the section 4061 notice as of January 1, 2005, the 2005 table must be used to determine the extent of Ramirez's permanent disability, and the WCAB and the WCJ erred in concluding otherwise. Accordingly, we will remand this matter to the WCAB, so that it can send the case back to the trial level to recalculate Ramirez's permanent disability rating under the 2005 schedule.

## DISPOSITION

The WCAB's order denying Energetic's petition for reconsideration is annulled. The matter is remanded for further proceedings consistent with the views expressed herein. The parties shall bear their own costs in the proceedings before this court. (Cal. Rules of Court, rule 8.490(m)(2).)

Blease, Acting P. J., and Hull, J., concurred.