[No. B197186. Second Dist., Div. Seven. Jan. 29, 2008.]

ZENITH INSURANCE CO., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and RANDOLPH
CUGINI, Respondents.

484

## Counsel

Wogee, Hagner & Hudges, Helen S. Thies; Law Offices of Saul Allweiss and Michael A. Marks for Petitioner.

Janoff, Karpel & Cowan and Paul I. Cowan for Respondent Randolph Cugini.

No appearance for Respondent Workers' Compensation Appeals Board.

## Opinion

**WOODS, J.**—Pursuant to the Legislature's 2004 comprehensive reform of workers' compensation under Senate Bill No. 899 (2003–2004 Reg. Sess.), a new schedule for rating permanent disabilities of injured workers was adopted and became effective on January 1, 2005. The Legislature also amended Labor Code section 4660, subdivision (d)[1] (section 4660(d)), which provides that the new schedule applies prospectively to compensable injuries on or after the effective date, as well as to compensable claims arising before January 1, 2005, "when there has been either no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability, or when the employer is not required to provide the notice required by Section 4061 to the injured worker."

Zenith Insurance Company petitions for writ of review and contends that the new schedule applies to respondent Randolph Cugini's 2004 industrial injury, because section 4061, subdivision (a) (section 4061(a)) expressly requires the notice with the last payment of temporary disability indemnity in 2005 and not the first payment in 2004 as determined by the Workers' Compensation Appeals Board (WCAB). Petitioner also contends that the new

---

[1] All further statutory references are to the Labor Code unless stated otherwise.

schedule applies because the treating physician's report in 2004 that indicated the existence of permanent disability was an unsupported conclusion and not substantial evidence. In addition, permanent disability did not exist because Cugini's condition was not permanent and stationary until 2005.

Based on the plain language of section 4061(a), which provides for notice of permanent disability indemnity "[t]ogether with the last payment of temporary disability indemnity," we agree with petitioner that the WCAB erred in ruling that the requirement to provide the notice arose with the first payment of temporary disability indemnity in 2004. However, we conclude that the WCAB should determine on remand whether there is a comprehensive medical-legal or treating physician's report "indicating the existence of permanent disability" under section 4660(d), which is substantial evidence considering the entire record. We also conclude that the injured worker's permanent and stationary status is not required before a physician's report can indicate the existence of permanent disability under section 4660(d), for the reasons we stated in *Genlyte Group, LLC v. Workers' Comp. Appeals Bd.* (2008) 158 Cal.App.4th 705 [69 Cal.Rptr.3d 903] (*Genlyte*). Accordingly, the WCAB's decision is annulled and the matter is remanded for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Cugini's Industrial Injury and Treatment*

Randolph Cugini, a swimming pool technician for Browning's Pool Service, insured for workers' compensation by Zenith Insurance Company (Zenith), injured his back at work on June 18, 2004, when he lifted two gallons of chlorine out of the bed of a pickup truck. Cugini was referred to Little Company of Mary Hospital for treatment, and an MRI was performed that revealed a five-millimeter disc bulge at L3, a small disc protrusion with moderate narrowing at L3-4, and multilevel degenerative disc disease and diffuse disc bulging. Cugini treated with various physicians and medications were prescribed and back surgery discussed.

Cugini also was referred to Robert Fenton, M.D., for an orthopedic consultation and treatment. In a report dated October 12, 2004, Dr. Fenton

indicated that the diagnosis was "L2-3 left-sided inter-foraminal disc hernia-tion refractory to conservative care" based upon the history, medical record review, X-rays and physical examination. Dr. Fenton recommended that Cugini remain temporarily totally disabled and off work, and undergo evalu-ation by a neurosurgeon.[2] In a three-sentence report dated December 28, 2004, Dr. Fenton stated that, "I am a treating physician for the above-referenced applicant. There is a reasonable medical probability that permanent disability exists as a result of the injury or injuries for which I am treating this patient. I will describe that disability further in a subsequent report."

On December 15, 2005, Dr. Fenton reported that an inter-foraminal left-sided discectomy at L2-3 was performed on March 29, 2005, and Cugini's condition had reached maximum medical improvement.[3] Dr. Fenton also reported permanent disability under the former schedule, including no repetitive bending or hyperextension at the waist or lifting, pushing, or pulling over 20 pounds, and that Cugini had lost 60 percent of his preinjury capacity to perform such activities. Dr. Fenton further indicated that there was 13 percent whole person impairment under the new schedule, there was no apportionment to nonindustrial causes, and Cugini required vocational rehabilitation.

Zenith obtained a medical-legal evaluation from Phillip Kanter, M.D. Dr. Kanter reported that Cugini's condition had reached maximum medical improvement on November 15, 2005, he was precluded from repetitive heavy lifting, bending, pushing, pulling, stooping and crawling under the former schedule, there was 13 percent whole person impairment under the new schedule, there was no apportionment and vocational rehabilitation was required.

### 2. *Proceedings Before the WCAB*

The parties proceeded to trial before the workers' compensation adminis-trative law judge (WCJ), and submitted on the record and briefing which

---

[2] Cugini was examined by neurosurgeon David Morgan, M.D., who, in a report dated December 23, 2004, recommended an EMG but could "see no other option save for surgery for an extruded fragment."

[3] Maximum medical improvement or " 'Permanent and stationary status' is the point when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." (Cal. Code Regs., tit. 8, § 9785, subd. (a)(8).) Permanent and stationary status also has been found "[w]hen the employee's condition has reached maximum improvement or it has become stationary for a reasonable period of time." (*Kopitske v. Workers' Comp. Appeals Bd.* (1999) 74 Cal.App.4th 623, 631 [88 Cal.Rptr.2d 216].) " 'Permanent and stationary status refers to medical rehabilitation from an injury, not ability to work.' " (*Harold v. Workers' Comp. Appeals Bd.* (1980) 100 Cal.App.3d 772, 785 [161 Cal.Rptr. 508], quoting *Huston v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 868 [157 Cal.Rptr. 355].)

schedule applied. The WCJ determined that temporary disability indemnity was paid from June 19, 2004, through December 2, 2005, and permanent disability was 42 percent under the former schedule or $50,150 permanent disability indemnity. In the opinion on decision, the WCJ explained that the former schedule applies under section 4660(d) because a WCAB panel decision determined that the duty to provide the notice of permanent disability indemnity arises with the initial payment of temporary disability indemnity under section 4061(a).

Zenith petitioned the WCAB for reconsideration that the new schedule applies because the notice of permanent disability indemnity was required with the last payment of temporary disability indemnity in 2005 under the express language of section 4061(a). Cugini answered that the former schedule is applicable based on the WCAB's panel decision, and Dr. Fenton's report of December 28, 2004, indicated the existence of permanent disability.

In the report on reconsideration, the WCJ explained that "Considering the treatment that Applicant has undergone including surgery and a long recuperative period, it is hard to argue that the assessment of Dr. Fenton in 2004 was not accurate and thoughtful. This consideration in addition to the fact that temporary disability was paid and there is no evidence of the notice [having] been provided as indicated in the Labor Code, Applicant's right to have this permanent disability assessed under the 1997 schedule appears thoroughly appropriate."

The WCAB adopted the WCJ's decision and report and denied Zenith reconsideration. However, Commissioner Brass disagreed that Zenith's duty to provide notice of permanent disability indemnity arose in 2004 under section 4061(a), but concluded that Dr. Fenton's December 28, 2004, report "is a report by a treating physician indicating the existence of permanent disability. Therefore, the prior rating schedule applies in this case."

Zenith petitions for writ of review and contends further that the new schedule applies because the notice of permanent disability indemnity under section 4660(d) was not required until the last payment of temporary disability indemnity in 2005 under the express language of section 4061(a). In addition, Dr. Fenton's report of December 28, 2004, is not substantial evidence permanent disability existed because it is a three-sentence conclusion and Cugini was not permanent and stationary.

Cugini answers that the former schedule is applicable because the requirement to provide notice of permanent disability indemnity arose when Zenith paid temporary disability indemnity in 2004. In addition, Dr. Fenton's supplemental report of December 28, 2004, is substantial evidence of the existence

of permanent disability under section 4660(d) when read with his initial report of October 12, 2004. Moreover, numerous medical reports in 2004 indicated permanent disability existed. While section 4660(d) expressly refers to permanent disability, permanent and stationary status is not mentioned.

## DISCUSSION

### 1. *Standard of Review and Rules of Statutory Construction*

A decision by the WCAB that is based on factual findings which are supported by substantial evidence is affirmed by the reviewing court.[4] Substantial evidence generally means evidence that is credible, reasonable, and of solid value, which a reasonable mind might accept as probative on the issues and adequate to support a conclusion.[5] A factual finding, order, decision or award is not based on substantial evidence if unreasonable, illogical, arbitrary, improbable, or inequitable considering the entire record and statutory scheme.[6] The reviewing court also may not isolate facts which support or disapprove of the WCAB's conclusions and ignore facts which rebut or explain the supporting evidence, but must examine the entire record.[7] Similarly, the reviewing court may not reweigh evidence or decide disputed facts.[8]

Interpretation of governing statutes or application of the law to undisputed facts is decided de novo by the reviewing court, even though the WCAB's interpretation is entitled to great weight unless clearly erroneous.[9] The Legislature's intent should be determined and given effect.[10] The Legislature's intent is generally determined from the plain meaning of the statutory

---

[4] Section 5952; *LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432] (*LeVesque*); *Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26] (*Western Growers*).

[5] *Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 164 [193 Cal.Rptr. 157, 666 P.2d 14] (*Braewood*).

[6] *Western Growers, supra,* 16 Cal.App.4th at page 233; *Bracken v. Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 254 [262 Cal.Rptr. 537].

[7] *Braewood, supra,* 34 Cal.3d at page 164; *Garza v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451] (*Garza*); *LeVesque, supra,* 1 Cal.3d at pages 637–638.

[8] *Western Growers, supra,* 16 Cal.App.4th at page 233.

[9] *Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1331 [57 Cal.Rptr.3d 644, 156 P.3d 1100] (*Brodie*); *Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 828 [45 Cal.Rptr.2d 197].

[10] *Brodie, supra,* 40 Cal.4th at page 1324; *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978] (*DuBois*); *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] (*Moyer*).

language, unless the language or intent is uncertain or ambiguous.[11] Interpretation of the statutory language should be consistent and harmonized with the purpose of the statute and the statutory framework as a whole.[12] Where statutory language or the Legislature's intent is uncertain or ambiguous, rules of construction, legislative history or historical use aid in determining the meaning or intent.[13]

In addition, the reviewing court is obligated to liberally construe workers' compensation.[14] However, liberal construction under "Section 3202 is a tool for resolving statutory ambiguity where it is not possible through other means to discern the Legislature's actual intent."[15]

2. *The 2004 Reform of Workers' Compensation Under Senate Bill No. 899*

On April 19, 2004, the Legislature enacted a comprehensive reform of workers' compensation under Senate Bill No. 899 (2003–2004 Reg. Sess.) (Senate Bill 899). Senate Bill 899 was an urgency measure "designed to alleviate a perceived crisis in skyrocketing workers' compensation costs," although some employee benefits increased.[16]

■ Section 4660, which governs how the percentage of permanent disability is determined,[17] was amended by the Legislature as part of the reform. Part of the amendment required a new schedule which incorporated the American Medical Association Guides to the Evaluation of Permanent

---

[11] *DuBois, supra*, 5 Cal.4th at pages 387–388; *Moyer, supra*, 10 Cal.3d at page 230.

[12] *Brodie, supra*, 40 Cal.4th at page 1328; *DuBois, supra*, 5 Cal.4th at page 388; *Moyer, supra*, 10 Cal.3d at page 230.

[13] *DuBois, supra*, 5 Cal.4th at pages 387–388, 393.

[14] Section 3202 provides: "This division and Division 5 (commencing with Section 6300) shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." See generally *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150].

[15] *Brodie, supra*, 40 Cal.4th at page 1332.

[16] *Brodie, supra*, 40 Cal.4th at pages 1328–1329 (method of calculating permanent disability percentage by subtracting apportioned permanent disability percentage unchanged by Sen. Bill 899).

[17] Section 4660, subdivision (a) provides: "In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his or her age at the time of the injury, consideration being given to an employee's diminished future earning capacity."

Impairment (5th ed.)[18] on or before January 1, 2005.[19] The new schedule went into effect on January 1, 2005, superseding the former 1997 schedule.[20] As with the 1997 schedule under former section 4660, subdivision (c), the new schedule applies prospectively to compensable injuries on or after the effective date under amended section 4660(d).

However, section 4660(d) also provides that the new schedule applies to compensable claims arising before January 1, 2005, "when there has been either no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability, or when the employer is not required to provide the notice required by Section 4061 to the injured worker."[21] "In other words, when any of these three circumstances have occurred before January 1, 2005, the percentage of permanent disability will be calculated using the earlier schedule that was in effect on the date of the injury."[22] "On the other hand, when *none* of the three circumstances has occurred before January 1, 2005, then the 2005 schedule applies."[23]

---

[18] Section 4660, subdivision (b)(1) provides: "For purposes of this section, the 'nature of the physical injury or disfigurement' shall incorporate the descriptions and measurements of physical impairments and the corresponding percentages of impairments published in the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment (5th Edition)."

[19] Section 4660, subdivision (e) provides: "On or before January 1, 2005, the administrative director shall adopt regulations to implement the changes made to this section by the act that added this subdivision."

[20] See California Code of Regulations, title 8, section 9805; *Energetic Painting & Drywall, Inc. v. Workers' Comp. Appeals Bd.* (2007) 153 Cal.App.4th 633, 636 [63 Cal.Rptr.3d 210] (*Energetic Painting*); *Zenith Ins. Co. v. Workers' Comp. Appeals Bd.* (2007) 153 Cal.App.4th 461, 464 [62 Cal.Rptr.3d 683] (*Zenith*); *Costco Wholesale Corp. v. Workers' Comp. Appeals Bd.* (2007) 151 Cal.App.4th 148, 152 [59 Cal.Rptr.3d 611] (*Costco*) (new schedule applies where comprehensive medical-legal report does not indicate existence of permanent disability).

[21] The full text of section 4660(d) provides: "The schedule shall promote consistency, uniformity, and objectivity. The schedule and any amendment thereto or revision thereof shall apply prospectively and shall apply to and govern only those permanent disabilities that result from compensable injuries received or occurring on and after the effective date of the adoption of the schedule, amendment or revision, as the fact may be. For compensable claims arising before January 1, 2005, the schedule as revised pursuant to changes made in legislation enacted during the 2003-04 Regular and Extraordinary Sessions shall apply to the determination of permanent disabilities when there has been either no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability, or when the employer is not required to provide the notice required by Section 4061 to the injured worker."

[22] *Costco, supra*, 151 Cal.App.4th at page 152; see also *Chang v. Workers' Comp. Appeals Bd.* (2007) 153 Cal.App.4th 750 [63 Cal.Rptr.3d 219] (schedule effective Jan. 1, 2005, applies to pending matters regardless of date of injury unless exception under § 4660(d) applies).

[23] *Energetic Painting, supra*, 153 Cal.App.4th at page 636, original italics; see also *Aldi v. Carr* (2006) 71 Cal.Comp.Cases 783.

In many cases, application of the new schedule reduces the injured worker's permanent disability percentage, rating and compensation.[24] In this case, the parties stipulated that the permanent disability rating under the former schedule was 42 percent based on Dr. Fenton's opinion and 37 percent based on Dr. Kanter's opinion. Under the new schedule, both physicians reported 13 percent whole person impairment which the parties stipulated is a permanent disability rating of 22 percent.

> 3. *The Notice Under Section 4660(d) Is Required with the Last Payment of Temporary Disability Indemnity Under the Express Language of Section 4061(a)*

Zenith contends that the new schedule applies under section 4660(d) because section 4061(a) expressly states that the notice of permanent disability indemnity is required with the last payment of temporary disability, and not the first payment in 2004 as determined by the WCJ. Zenith argues that the WCJ's application of the former schedule is contrary to the Legislature's intent to include as many cases as possible under the workers' compensation reform.

Cugini contends that the WCJ's application of sections 4660(d) and 4061(a) and the former schedule is correct, as confirmed by *Pendergrass v. Duggan Plumbing* (2007) 72 Cal.Comp.Cases 95, 98 (*Pendergrass I*). In *Pendergrass I*, the WCAB in bank concluded that the former schedule applied under section 4660(d), because the duty to provide notice of permanent disability indemnity arises with the first payment of temporary disability indemnity, and execution of the duty occurs with the last payment under section 4061(a).

▪ We conclude that the notice requirement is not triggered with the first payment of temporary disability indemnity simply because the notice will be required once temporary disability indemnity has been paid. The plain and unambiguous language of section 4061(a) states that notice of permanent disability indemnity shall be provided by the employer "[t]ogether with the last payment of temporary disability indemnity."[25] Moreover, *Pendergrass I* was

---

[24] See *Vera v. Workers' Comp. Appeals Bd.* (2007) 154 Cal.App.4th 996, 1000–1001 [65 Cal.Rptr.3d 151] (*Vera*) (WCAB's application of new schedule resulting in 26 percent permanent disability and award of $18,823.75 indemnity affirmed; WCJ's application of former schedule resulted in 59 percent permanent disability rating and award of $62,576.25 indemnity).

[25] Section 4061 provides in part: "(a) Together with the last payment of temporary disability indemnity, the employer shall . . . provide the employee one of the following: [¶] (1) Notice either that no permanent disability indemnity will be paid . . . or notice of the amount of permanent disability indemnity determined by the employer to be payable. . . . [¶] (2) Notice that permanent disability indemnity may be or is payable, but that the amount cannot be determined because the employee's medical condition is not yet permanent and stationary. The

not final when the decision was reversed on reconsideration by *Pendergrass v. Duggan Plumbing* (2007) 72 Cal.Comp.Cases 456 (*Pendergrass II*),[26] and is not binding on this court in any case.[27] In addition, appellate courts that have interpreted section 4660(d) with section 4061(a) have concluded that the notice is required with the last payment of temporary disability indemnity.[28] To find that the notice requirement is triggered upon payment of temporary disability indemnity would render the other two exceptions under section 4660(d) virtually meaningless,[29] and violate the Legislature's expressed intent to include specified claims under the new or former schedule.[30] Therefore, the notice exception to applying the new schedule under section 4660(d) was not satisfied by Zenith's payment of temporary disability indemnity in 2004 where the last payment was after January 1, 2005, and the decision must be annulled.

4. *A Treating Physician's or Other Qualifying Report Indicating the Existence of Permanent Disability Under Section 4660(d) Must Be Substantial Evidence in Light of the Entire Record*

■ Zenith also contends that the new schedule applies because Dr. Fenton's report of December 28, 2004, is a three-sentence conclusion that permanent disability exists, which is unsupported by the history, facts, a diagnosis or

notice shall advise the employee that his or her medical condition will be monitored until it is permanent and stationary, at which time the necessary evaluation will be performed to determine the existence and extent of permanent impairment and limitations for the purpose of rating permanent disability and to determine the need for continuing medical care, or at which time the employer will advise the employee of the amount of permanent disability indemnity the employer has determined to be payable."

[26] In *Pendergrass II*, the WCAB in bank (with a new commissioner) reversed *Pendergrass I*, and concluded that the notice of permanent disability indemnity under section 4660(d) is required with the last payment of temporary disability indemnity as provided by section 4061(a).

[27] See *Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, footnote 2 [94 Cal.Rptr.2d 186].

[28] See *Energetic Painting, supra*, 153 Cal.App.4th 633 (new schedule applies where notice of permanent disability indemnity not required until last payment of temporary disability indemnity on March 24, 2005); *Zenith, supra*, 153 Cal.App.4th 461 (new schedule applies where notice of permanent disability indemnity not required until last payment of temporary disability indemnity on August 5, 2005); *Costco, supra*, 151 Cal.App.4th at pages 156–157 (notice of permanent disability indemnity not required until temporary disability indemnity ended on March 24, 2005).

[29] As stated in *Costco, supra*, 151 Cal.App.4th at page 157, "Temporary disability will have been paid or owed before January 1, 2005, in virtually every case where a qualified medical examiner or doctor prepared a pre-2005 medical report indicating permanent disability, meaning there would be no practical need for the other two exceptions." See also *Energetic Painting, supra*, 153 Cal.App.4th at pages 638-639; *Zenith, supra*, 153 Cal.App.4th at page 465.

[30] See *Energetic Painting, supra*, 153 Cal.App.4th at pages 638–639; *Zenith, supra*, 153 Cal.App.4th at page 465; *Costco, supra*, 151 Cal.App.4th at pages 156–157.

reasoning and is not substantial evidence under *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2007) 146 Cal.App.4th 1311, 1315 [53 Cal.Rptr.3d 568] (*State Fund*) (new schedule applies where physician's 2004 report indicating the existence of permanent disability under § 4660(d) not substantial evidence). Cugini contends that Dr. Fenton's report should be read with his initial report of October 12, 2004, and there are numerous medical reports indicating the existence of permanent disability under section 4660(d).

■ We conclude that determining whether Dr. Fenton's December 28, 2004, report is substantial evidence "indicating the existence of permanent disability" under section 4660(d), or there are other qualifying medical reports, should be based on the entire record.[31] Although the court in *State Fund* determined that the treating physician's report, consisting of the single sentence " 'I believe permanent disability is within reasonable medical probability emanating from this injury . . . ,' "[32] was not substantial evidence, the court considered the physician's previous medical reports in reaching its conclusion. The court explained that, "Nothing in the reports, however, appears to tie the range of motion and pain symptoms to Dr. Morales's December 15, 2004 prediction of permanent disability. To the contrary, the reports make no mention at all of prognosis, but instead simply declare that Echeverria remained temporarily totally disabled. None of the reports provide any reasoning to support Dr. Morales's December 15, 2004 conclusion."[33]

However, the circumstances in this case are very different than the situation described in *State Fund*. The history, facts and diagnosis of L2-3 disc herniation were documented in Dr. Fenton's report of October 12, 2004, and are supported by objective findings such as the positive MRI. The consulting neurosurgeon also confirmed the need for back surgery before Dr. Fenton's report of December 28, 2004. The WCJ and Commissioner Brass indicated that the record provided the reasoning for Dr. Fenton's opinion in 2004 that permanent disability existed within the meaning of section 4660(d).

■ However, it is well settled that the finding of permanent disability is a question of fact,[34] and the two other commissioners on the WCAB panel in this case applied the former schedule based on an incorrect interpretation of the notice provision of section 4660(d) and did not decide the issue.

---

[31] *Braewood, supra,* 34 Cal.3d at page 164; *Garza, supra,* 3 Cal.3d at page 317; *LeVesque, supra,* 1 Cal.3d at pages 637–638.

[32] *State Fund, supra,* 146 Cal.App.4th at page 1314, italics omitted.

[33] *State Fund, supra,* 146 Cal.App.4th at page 1315.

[34] See *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2004) 119 Cal.App.4th 998, 1005–1006 [14 Cal.Rptr.3d 793]; *Dalen v. Workmen's Comp. Appeals Bd.* (1972) 26 Cal.App.3d 497, 502–503 [103 Cal.Rptr. 128]; *Sweeney v. Industrial Acc. Com.* (1951) 107 Cal.App.2d 155, 159–160 [236 P.2d 651]; *County of L. A. v. Indus. Acc. Com.* (1936) 14 Cal.App.2d 134, 137 [57 P.2d 1341].

Accordingly, whether Dr. Fenton's report "indicating the existence of permanent disability" under section 4660(d) is substantial evidence in light of the entire record, or there is any other qualifying medical report, should be decided on remand.

> 5. *The Injured Worker's Condition Need Not Be Permanent and Stationary for the Comprehensive Medical-legal or Treating Physician's Report to Indicate the Existence of Permanent Disability*

Zenith further contends that permanent disability did not exist as reported by Dr. Fenton on December 28, 2004, because Cugini's condition was not permanent and stationary. As indicated by Dr. Fenton and the WCJ, Cugini reached permanent and stationary status in December 2005. If Zenith is correct that a permanent and stationary status is required under section 4660(d), then the new schedule would necessarily apply to Cugini's permanent disability.

Zenith relies on *Vera, supra,* 154 Cal.App.4th 996, which applied the new schedule because "the treating physician's report must indicate that the claimant has a ratable disability that has reached permanent and stationary status, and that in enacting section 4660, subdivision (d), the Legislature was using the term 'permanent disability' as another way of referring to the status of having a ratable disability that is 'permanent and stationary.' "[35] The *Vera* court was persuaded that the terms "permanent and stationary" and "permanent disability" are interchangeable under section 4660(d) because applicable regulations define identically "permanent and stationary status"[36] and when "[a] disability is considered permanent."[37] (See *Vera, supra,* 154 Cal.App.4th at pp. 1005–1007.) In addition, the treating physician is not required to report permanent disability under the applicable schedule until permanent and stationary status is achieved pursuant to California Code of Regulations, title 8, section 9785, subdivision (g).[38] (See *Vera, supra,* 154 Cal.App.4th at pp. 1005–1007.)

---

[35] *Vera, supra,* 154 Cal.App.4th at page 1005.

[36] See California Code of Regulations, title 8, section 9785, subdivision (a)(8), footnote 3, *ante.*

[37] See California Code of Regulations, title 8, section 10152, which states: "A disability is considered permanent when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment."

[38] California Code of Regulations, title 8, section 9785, subdivision (g) provides in part: "When the primary treating physician determines that the employee's condition is permanent and stationary, the physician shall, unless good cause is shown, report within 20 days from the date of examination any findings concerning the existence and extent of permanent impairment and limitations . . . . For permanent disability evaluation performed pursuant to the permanent disability evaluation schedule adopted on or after January 1, 2005, the primary treating

■ For reasons we expressed in *Genlyte, supra,* 158 Cal.App.4th 705, we conclude that the terms "permanent disability" and "permanent and stationary" are not interchangeable, and a permanent and stationary status is not required in order for the comprehensive medical-legal or treating physician's report to indicate the existence of permanent disability under section 4660(d). The term "permanent disability," although not defined in the Labor Code,[39] has been historically defined in workers' compensation jurisprudence as the impairment of earning capacity, impairment of the normal use of a body member or function, or a competitive handicap in the open labor market.[40] The Legislature has repeatedly demonstrated its ability to distinguish the terms "permanent disability" and "permanent and stationary" in this area of the law when that is what it intends. Section 4061, subdivision (a)(2) requires the employer to provide "Notice that permanent disability indemnity may be or is payable, but that the amount cannot be determined because the employee's medical condition is not yet permanent and stationary. The notice shall advise the employee that his or her medical condition will be monitored until it is permanent and stationary . . . ."[41] As Cugini points out, the Legislature only used the term "permanent disability" and not the term "permanent and stationary" in section 4660(d). ■ "We are reluctant to conclude that the Legislature's use of different terms, at different times in the statutory scheme, is meaningless."[42]

■ Moreover, section 4660(d) is worded broadly to include any comprehensive medical-legal or treating physician's report "indicating the existence of permanent disability." The language is not limited to what the *Vera* court describes as the typical final or permanent and stationary report,[43] in which the extent of ratable permanent disability is reported.[44] In an appropriate case,

physician's reports concerning the existence and extent of permanent impairment shall describe the impairment in accordance with the AMA Guides . . . ."

[39] See *General Foundry Service v. Workers' Comp. Appeals Bd.* (1986) 42 Cal.3d 331, 334 [228 Cal.Rptr. 243, 721 P.2d 124] (*General Foundry*).

[40] *State Compensation Ins. Fund v. Industrial Acc. Com.* (1963) 59 Cal.2d 45, 52 [27 Cal.Rptr. 702, 377 P.2d 902] (subsequent injury with overlapping permanent disability to different body parts compensable to extent alters earning capacity or ability to compete in labor market); *Luchini v. Workmen's Comp. App. Bd.* (1970) 7 Cal.App.3d 141, 144 [86 Cal.Rptr. 453] (prophylactic work restriction basis for permanent disability); *J. T. Thorp, Inc. v. Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 336 [200 Cal.Rptr. 219] (medical claim for asbestos exposure even though no temporary or permanent disability or date of injury triggering statute of limitations; permanent disability awarded when manifested).

[41] See also section 4658, subdivision (d)(2), which provides for increase or decrease of permanent disability indemnity depending on whether the employer offers regular, modified or alternative work "within 60 days of a disability becoming permanent and stationary."

[42] *In re Zacharia D.* (1993) 6 Cal.4th 435, 451 [24 Cal.Rptr.2d 751, 862 P.2d 751].

[43] *Vera, supra,* 154 Cal.App.4th at page 1006.

[44] Generally, when permanent and stationary status is achieved, the extent of ratable permanent disability is reported (*Vera, supra,* 154 Cal.App.4th at p. 1006; § 4060 et seq.; Cal. Code Regs., tit. 8, §§ 9785, subd. (g), 10606); temporary disability indemnity ends if the

a physician is not precluded from reporting that permanent disability exists prior to permanent and stationary status or the extent of ratable permanent disability is known.

By providing for notice of permanent disability indemnity that may be or is payable before the employee's medical condition is permanent and stationary under section 4061, subdivision (a)(2), the Legislature acknowledged that permanent disability may exist and be reported by physicians in order for employers to provide the required notice before permanent and stationary status is achieved. Similarly, the claims administrator must provide notice of permanent disability indemnity that is or may be payable even though the employee's medical condition is not yet permanent and stationary under California Code of Regulations, title 8, section 9812, subdivision (g).[45]

Recognition by the Legislature under the statutory scheme that permanent disability may exist before there is permanent and stationary status is also consistent with case law. In instances of insidious and progressive occupational diseases, such as from exposure to asbestos, permanent disability may be rated and indemnity advances ordered before the employee's medical condition is permanent and stationary, with jurisdiction reserved pending permanent and stationary status or permanent total disability.[46] Permanent

---

injured worker has not already returned to work, and the right to permanent disability indemnity arises. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1291–1292 [135 Cal.Rptr.2d 665, 70 P.3d 1076]; *LeBoeuf v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 238 [193 Cal.Rptr. 547, 666 P.2d 989]; *Edgar v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1, 10–11 [76 Cal.Rptr.2d 83].)

[45] California Code of Regulations, title 8, section 9812, subdivision (g) states in part: "If the injury has resulted or may result in permanent disability but the employee's medical condition is not permanent and stationary, the claims administrator shall advise the employee together with the last payment of temporary disability indemnity, that permanent disability indemnity is or may be payable but that the amount cannot be determined because the employee's medical condition has not yet reached a stationary status."

[46] *General Foundry, supra,* 42 Cal.3d at pages 333, 338; *Chavira v. Workers' Comp. Appeals Bd.* (1991) 235 Cal.App.3d 463, 473 [286 Cal.Rptr. 600].

Quoting the then applicable administrative regulation (former Cal. Admin. Code, tit. 8, § 9735), which provided " '[a] disability is considered permanent after the employee has reached maximum improvement or his condition has been stationary for a reasonable period of time . . . ,' " the Supreme Court in *General Foundry* held "[t]his definition is inadequate . . . when applied to a progressive occupational disease." (*General Foundry, supra,* 42 Cal.3d at pp. 334, 335.) The current regulatory definition of permanent disability (Cal. Code Regs., tit. 8, § 10152) is substantially the same: "A disability is considered permanent when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." The Court of Appeal in *Vera, supra,* 154 Cal.App.4th at page 1007, noted the same language is used in the portion of the regulations setting forth a treating physician's reporting duties with regard to "permanent and stationary status" (see Cal. Code Regs., tit. 8, § 9785, subd. (a)(8) [quoted in fn. 3, *ante*]) and suggested use of identical definitions in the regulations reinforced

disability before permanent and stationary status may also be found in cases involving serious injuries, such as severe burns, deafness or the loss of sight or limbs.[47]

Therefore, the terms "permanent disability" and "permanent and stationary" status are not used interchangeably under the statutory scheme and case law, nor did the Legislature indicate in section 4660(d) or Senate Bill 899 that such use was intended. We therefore conclude that a permanent and stationary status is not required in order for the comprehensive medical-legal or treating physician's report to indicate the existence of permanent disability under section 4660(d).

> 6. *Remand to the WCAB Is Necessary to Determine If Dr. Fenton's December 28, 2004, Report, or Any Other Qualifying Medical Report, Indicates the Existence of Permanent Disability Under Section 4660(d)*

As we have previously explained, two commissioners on the WCAB panel in this case applied the former schedule based on the incorrect interpretation of the notice provision in section 4660(d), and did not determine whether there is a comprehensive medical-legal or treating physician's report indicating the existence of permanent disability as did the WCJ and Commissioner Brass. The WCAB also has extensive experience and expertise in interpreting and applying the statutory scheme and case law, and is charged with the administration of workers' compensation law.[48] Accordingly, we remand the matter to the WCAB to determine whether Dr. Fenton's December 28, 2004, report, or any other qualifying report, indicates the existence of permanent disability under section 4660(d).

---

its holding the Legislature meant "permanent and stationary" when it said "permanent disability." In light of the Supreme Court's conclusion the regulatory definition of permanent disability is "inadequate" to cover all cases of permanent disability, we find the *Vera* court's analysis on this point unpersuasive.

[47] *Tarr v. Industrial Acc. Com.* (1958) 164 Cal.App.2d 834, 835–836 [331 P.2d 417] (*Tarr*) (deafness that will not lessen permanent disability even though not permanent and stationary); *Dahlbeck v. Industrial Acc. Com.* (1955) 135 Cal.App.2d 394, 399–401 [287 P.2d 353] (*Dahlbeck*) (disability from burns over body not permanent and stationary combined with subsequent injury disability). We note that the courts in *Tarr* and *Dahlbeck* also reasoned that the applicable statute only used the word "permanent" and not the word "stationary" in rejecting the Industrial Accident Commission's reading of permanent and stationary into the law for easier and practical administration. (*Tarr, supra,* 164 Cal.App.2d at pp. 835–836; *Dahlbeck, supra,* 135 Cal.App.2d at pp. 399–400.)

[48] *Brodie, supra,* 40 Cal.4th at page 1331.

## DISPOSITION

The decision of the WCAB is annulled and the matter is remanded to determine which schedule applies and for further proceedings not inconsistent with this opinion. The parties are to bear their own costs in this proceeding.

Perluss, P. J., and Zelon, J., concurred.